[No. 4924. Decided September 21, 1904.]

WASHINGTON STATE BANK OF ELLENSBURG, *Respondent,*
v. GEORGE E. DICKSON *et al., Appellants.*[1]

SPECIFIC PERFORMANCE—AGREEMENT TO CONVEY LAND—DEFENSES —TITLE OF DEFENDANT—EVIDENCE—SUFFICIENCY. In an action to compel the specific performance of an agreement to convey an undivided half interest in certain real estate, the defendant refusing to convey on the claim that he owned only a one-fourth interest, there is sufficient evidence to warrant a finding that he was the owner of a one-half interest, where it appears that originally the property was purchased at receiver's sale on behalf of the defendant and three others, each to own a one-fourth interest, that two of the other purchasers failed to pay their shares, and the defendant and one other, in whose name the deed was taken, jointly advanced the payments, leased the property as joint owners, and represented to the plaintiff that the defendant owned a one-half interest, by which representations plaintiff was induced to enter into the contract.

SAME— CORPORATION AS PURCHASER— DEFENSE THAT OFFICER WAS NOT AUTHORIZED TO PURCHASE. In an action by a banking corporation to compel the specific performance of a contract to convey land, there is sufficient evidence that the contract was authorized by the plaintiff where it appears that it was made by its cashier under directions of the trustees, and that the corporation assumed the burdens of the contract by assuming ownership and paying the installment of the price, and subsequently the trustees by a formal order duly ratified all of the acts.

SAME—SALE OF COMMUNITY PROPERTY—ACTS OF HUSBAND RATIFIED BY WIFE. A specific performance of a contract to convey

1Reported in 77 Pac. 1067.

community property, made by the husband, may be decreed, although not signed by the wife, where she was informed of the sale, gave full consent thereto, and joined in the execution of a deed prepared to consummate the sale.

Appeal from a judgment of the superior court for Kittitas county, Rudkin, J., entered April 30, 1903, upon findings in favor of the plaintiff after a trial on the merits before the court without a jury, in an action for the specific performance of a contract to convey real property.     Affirmed.

*Kauffman & Frost* and *Eugene E. Wager,* for appellants.

*Graves & Englehart,* for respondent.

FULLERTON, C. J.—The respondent, plaintiff below, brought this action against the appellants to compel them to convey to it an undivided one-half interest in certain real property situated in the city of Ellensburg.    The property was known as "The Snipes bank building."    The facts out of which the controversy arises are, in substance, these:    On November 4, 1889, the property belonged to the estate of Ben. E. Snipes & Company, an insolvent copartnership, which was then in the hands of a receiver appointed by the superior court of Kittitas county.    The property had theretofore been ordered sold by the superior court, and the receiver had advertised it for sale—the sale to take place on the day above named.    In anticipation of the sale, the appellants George E. Dickson and Frank N. McCandless, together with one E. E. Wager and one C. V. Warner, entered into an agreement for the purchase of the property.    While the terms of the agreement are not very clear, it seems that Dickson was to bid the property in at the sale in his own name, and that each of the others was to have a one-fourth interest therein on the payment of

one-fourth of the purchase price.    Pursuant to the agreement, Dickson bid on the property at the sale under the title of "G. E. Dickson, Agent," and the same was struck off to him for the sum of $10,350.    The sale was confirmed by the court on the 24th of November, at which time the court made an order directing the receiver to issue a deed to the property to "G. E. Dickson, trustee."    The deed was made by the receiver in due time, but was held by him without delivery, pending the payment of the purchase price, for a period of nearly three years thereafter, the final payment being made and the deed delivered to Dickson after this controversy arose.    Such portion of the purchase price of the property as was paid at the time of the sale was paid by Dickson and McCandless, the former paying $2,000 and the latter $2,707.26.    Neither Wager nor Warner paid any part of the purchase price, and they subsequently withdrew from the agreement, with the consent of, or at least without objection on the part of, the other parties.    Dickson and McCandless continued thereafter to claim the property in equal shares, leasing the same to the respondent, after its incorporation in 1902, by a joint lease executed by themselves and their wives.    On September 25, 1902, one C. W. Johnsone, acting on behalf of the respondent and for its benefit, entered into an agreement with McCandless for the purchase of his undivided half interest in the property.    The purchase price agreed upon was $6,750, of which $1,000 was paid at the time, and the balance agreed to be paid on the delivery of a deed to the premises, showing perfect title, which was not to be delivered later than October 5, 1902.    At the time the agreement was entered into, a memorandum thereof was made by McCandless and delivered to Johnsone, to the following effect:

"Ellensburg, Wash., Sept. 25, 1902.

"Received of C. W. Johnsone One Thousand Dollars ($1,000) part payment on one undivided one-half interest in and to the bank building known as "The Snipes bank building," situated on the corner of Pearl and Fourth streets, in Ellensburg, Wash.    The full purchase price of said one undivided half interest being $6,750, the remaining $5,750 to be paid by said C. W. Johnsone to Frank N. McCandless or order, on delivery to said C. W. Johnsone or order, of a good and sufficient deed of warranty, showing perfect title to said property.    Said deed to be executed and delivered by not later than October 5, 1902. (Signed)    Frank N. McCandless."

Some months later the appellants McCandless and wife executed a deed to the respondent for an undivided one-half interest in the property, but, pending the proceedings had to procure the delivery of the deed from the receiver to Dickson, the appellant Frank N. McCandless refused to proceed further with the matter, and announced that he would not deliver the deed he and his wife had executed, or permit a conveyance of his interests in the property to be made to the respondent by the holder of the legal title.    Dickson, also, pending the negotiations, refused to recognize the claim of McCandless to a one-half interest in the property, claiming that McCandless had at most nothing more than a one-fourth interest therein.

The respondent thereupon instituted this action.    In its complaint it set up, substantially, the foregoing facts, and prayed that it be declared to be the owner of an undivided one-half interest in the property in question, and that the appellants be compelled to convey such interest to it.    To the complaint the appellants answered separately; such answers consisting of a denial of the allegations of the complaint, and a separate defense to the effect that the contract was not enforceable because of the statute of

frauds.   The court adjudged the respondent to have a valid contract for the conveyance to it of an undivided one-half interest in the property, and entered a decree accordingly.   The parties appealed separately, and filed separate briefs; the questions suggested, however, are in the main the same, and will be discusssed without reference to the party raising the question.

It is first contended that the court erred in finding that the appellants McCandless had an undivided one-half interest in the property in question, but the evidence supporting the finding, it seems to us, does not leave the question in doubt.   It is true, Dickson testified that the original agreement for the purchase of the property, entered into by the four persons above named, by which each was to acquire only a quarter interest in the property, was to become effective only in case the property was purchased for $8,000 or less, and that it was to belong to a Mr. Treman, if it cost more than that sum, yet this statement is not borne out by any of the other parties to the contract, and one of them testified that he had never before heard of it. Against this are his admissions, shown by unimpeached witnesses, made prior to the commencement of this action and when it was evidently not in contemplation, to the effect that McCandless did have an undivided one-half interest in it.   In the lease of the property made to the respondent, as we stated before, both Dickson and McCandless joined, as if equal owners, and it was then assumed by all of the parties that they owned equal interests. Moreover, it was because of these statements on the part of Dickson and McCandless that the respondents were induced to enter into the contract for the purchase of McCandless' interest, and good faith would hardly permit them now to successfully deny that he had such an interest.

It is next said that the respondent failed to show that Johnsone was authorized to make a contract in its behalf, for the purchase of the property, at the time he contracted for the interest of the McCandless.' The evidence on this point shows, that the respondent was a banking concern, and that Johnsone was its cashier; that the trustees of the corporation, although they had made no formal order to that effect which was spread upon the minutes of their meetings, had directed Johnsone to procure the property for the use of the bank, and that he was acting pursuant to such directions when he made the contract with McCandless; and that the bank at once took the benefits and assumed the burdens of the contract, by assuming ownership of the interest acquired by the contract, and by paying the installment of the purchase price. Moreover, it was further shown that the board of trustees, by a formal order which was duly recorded in their minutes, subsequently ratified all of the acts of the cashier, had in the matter pursuant to their informal directions. The formal ratification was had, it is true, after the appellants had repudiated the contract, and after the commencement of this action, but we think it was, nevertheless, when taken in connection with what had preceded it, sufficient to show that the contract was the contract of the bank. Unauthorized acts of a person purporting to act on behalf of a corporation become binding upon the corporation whenever they are duly ratified by it. Such a ratification is equivalent to a precedent authorization, and cures any defect in the original appointment. In other words, it makes the acts of the purported agent the acts of the corporation from the beginning. 10 Cyc. 1083, D, and cases cited. This being true, the bank could, of course, maintain this action.

Lastly, it is said that the interest of Frank N. McCandless acquired in the property by his purchase, was the com-

munity property of himself and wife, and that the contract sought to be enforced is void because it was not signed by the wife. But it is not the rule in this state that a contract for the sale of community real property must be signed by the wife in order to be binding upon her. We have held it enough if the contract, when made by the husband, had the sanction and approval of the wife, or if it was subsequently ratified by her. *Mudgett v. Clay,* 5 Wash. 103, 31 Pac. 424; *Konnerup v. Frandsen,* 8 Wash. 551, 36 Pac. 493; *Payne v. Still,* 10 Wash. 433, 38 Pac. 994; *Boston Clothing Co. v. Solberg,* 28 Wash. 262, 68 Pac. 715. Here there was both a previous authorization and a subsequent ratification. McCandless himself testified that he had talked the matter over with his wife prior to entering into the contract, and that it was entered into with her knowledge and full consent; and it will be remembered that she joined with her husband in a deed of the premises to the respondent. This was sufficient to bind her interest, under the authorities above cited.

The judgment is affirmed.

MOUNT, DUNBAR, and ANDERS, JJ., concur.