[No. 16010. Department Two. January 8, 1921.]

E. C. KAUFMAN *et al., Respondents,* v. WILLIAM D. PERKINS *et al., Appellants.*[1]

HUSBAND AND WIFE (69, 70)—COMMUNITY PROPERTY—LEASES — ESTOPPEL TO ASSERT INVALIDITY. A wife is not estopped to contest the husband's extension of a lease of community property, made without her knowledge or consent, from the mere fact that she had always been satisfied to have her husband handle community affairs including the leasing of community real estate; in view of Rem. Code, § 5918, prohibiting the husband's conveyance thereof unless the wife join in executing the instrument.

SAME. The voluntary installation of coal burners, which were removed, and other expenditures required by the lease to be made by a lessee holding over under an authorized extension of a lease, do not constitute a part performance which would estop the wife from asserting the invalidity of the extension.

Appeal from a judgment of the superior court for King county, Frater, J., entered April 28, 1920, upon findings in favor of the plaintiff, in an action for specific performance and to quiet title, tried to the court. Reversed.

*Peters & Powell,* for appellants.

*Carroll B. Graves,* for respondents.

HOLCOMB, C. J.—This action is for the specific performance of an alleged agreement for a five-year lease of community real property belonging to defendants.

Defendants appealed from the judgment of the trial court, decreeing specific performance, holding that plaintiffs were entitled to the occupancy of the premises as lessees thereof for a term of five years from November 10, 1919, quieting their interest and title in the leasehold for such period, and enjoining defendants from disturbing plaintiffs in the possession of the

[1]Reported in 194 Pac. 802.

premises as long as plaintiffs should perform the terms and conditions of the lease.

On April 23, 1914, defendants, who, as the owners of lot 11, block 16, of S. A. Bell's addition to the city of Seattle, were erecting thereon a building to be used as an apartment house, executed a lease of the premises to G. E. Sherwood and wife for a term of five years from September 1, 1914. This lease provided, however, that, in the event the building was not ready for occupancy by September 1, 1914, the lease should not begin to run until the building was ready, when the term should run for five years therefrom. In accordance with this provision, it was November 10, 1914, when the term began, and it was to run until November 10, 1919. On February 20, 1918, one Driscoll was the tenant, the property having passed to him through several hands. He was having financial difficulties and was unable to make certain needed improvements on the premises. Among other things, the installation of coal burners or furnaces was necessitated by the then existing oil shortage, notice having been given that oil would be discontinued. Driscoll thereupon gave up his tenancy, one R. L. Langer agreeing with appellant Perkins that he would take an assignment of the lease, and an extension thereof, for his brother, Roland G. Langer. Accordingly, Perkins sent the following letter:

"Seattle, Washington, February 20, 1918.

"R. G. Langer: We will draw up the necessary extension of the present lease of the Sheridan Apartments, or make out a new lease commencing November 10, 1919, for a period of two years at $9 per room, and the three following years at $9.50 per room; terms and conditions similar to the present lease, and the present mortgage on the furniture as security to be extended or arranged for by you.

WDP:A          Yours truly, Wm. D. Perkins."

Thereafter appellants refused to enter into a formal agreement for the extension of the lease or the making of a new lease, in accordance with the terms and conditions of the letter in question, and notified respondents that they (appellants) would not be bound thereby and that respondents must surrender the premises on November 10, 1919. Respondents then brought the action for specific performance of the alleged agreement in question.

Various rulings of the trial court are assigned as error, but we think a decision as to whether the failure of Mrs. Perkins to sign or acknowledge the agreement for the extension of the old lease or the execution of a new one excused compliance therewith, or whether the circumstances of the case are such as to estop her from denying the validity of the agreement, will be conclusive of this appeal.

Mrs. Perkins testified to the effect that she had always been satisfied to have her husband handle community affairs, including the leasing of community real estate; and the question is, whether she is now estopped to deny his authority to represent her in this transaction. On this question of estoppel, respondents cite, among other cases, *Young v. Porter,* 27 Wash. 551, 68 Pac. 362, an action for specific performance of an oral agreement to convey an undivided half interest in certain real and personal property. Specific performance was there decreed, but, in order to show that there the facts were different in material respects from those of the instant case, we quote from the concluding portion of the opinion in that case as follows:

"So far as the personal property was concerned, it was simply an incident of the real estate; and, while the wife was not a party to the original agreement, the finding of the court is to the effect that it was at all times customary for the husband to personally con-

duct all community business of himself and wife. This he had a right to do under the law, so far as the personal property was concerned; and it was personal property which, under the agreement with the respondent, was invested in this pottery plant. She also knew of the position occupied by the respondent in relation to the property, for she joined with the respondent and her husband in the lease of the property. Other testimony in the case shows conclusively that she was cog-- nizant of, and in effect consented to, the whole transaction.''

It is plain that, on account of the difference in circumstances, that case has no bearing upon the case now before us.

On this question respondents cite, also, the case of *Washington State Bank of Ellensburg v. Dickson,* 35 Wash. 641, 77 Pac. 1067, another action to compel specific performance. Respondents here rely upon the language in that opinion where, referring to the contention that the contract for the conveyance of community property there under consideration was void because not signed by the wife, we said:

''But it is not the rule in this state that a contract for the sale of community real property must be signed by the wife in order to be binding upon her. We have held it enough if the contract, when made by the husband, had the sanction and approval of the wife, or if it was subsequently ratified by her.'' (Citing authorities.)

To distinguish the *Dickson* case from the one at bar, it is only necessary to set out the language of the opinion in the *Dickson* case immediately following the above quotation, as follows:

''Here there was both a previous authorization and a subsequent ratification. McCandless himself (the husband) testified that he had talked the matter over with his wife prior to entering into the contract, and that it was entered into with her knowledge and full

consent; and it will be remembered that she joined with her husband in a deed of the premises to the respondent.''

It may be remarked here that Mrs. Perkins does not appear to have had any knowledge of the letter which is the subject of the present controversy.

Much reliance is placed by respondents on the case of *Zinn v. Knopes,* 111 Wash. 606, 191 Pac. 822; but we said there:

''The testimony shows that *the land was the separate property of the husband Henry Knopes, and that being true, if the lease was otherwise good, the fact that the wife had not joined in the execution of it is immaterial.*''

In the present case, the property belonged, of course, to the community consisting of appellants Perkins and wife.

Respondents also claim that the case of *Matzger v. Arcade Bldg. & R. Co.,* 80 Wash. 401, 141 Pac. 900, L. R. A. 1915 A 288, lends much support to their contention in respect to the question under discussion. There the lease in question was unacknowledged. It appears that the tenant there held the property under the lease for a considerable length of time. Equities were there shown to estop the denial of the validity of the lease. The *Matzger* case was later cited by us in the case of *Armstrong v. Burkett,* 104 Wash. 476, 177 Pac. 333, where the lessee sought to avoid the rule governing oral leases by setting up certain facts which she relied upon as creating an estoppel. We said in the opinion:

''The mere possession, the payment of rent and the conduct of a business in the usual way and for the sole benefit of the tenant, unaccompanied by circumstances which will create a consideration going to the term, will not make an oral lease from month to month a

term lease resting in estoppel." (Citing the *Matzger* case.)

*Andersonian Inv. Co. v. Wade,* 108 Wash. 373, 184 Pac. 327, was another case involving the question of estoppel; but, as to it, as well as to most of the other cases cited and discussed on this point, we say, in the language suggested by counsel for respondents, that:

"The numerous definitions of estoppel cannot be welded into a fixed rule of law. Equitable estoppel rests largely upon the facts and circumstances of each case. The cases themselves must be looked to and applied by way of analogy, rather than by rule."

In *Spreitzer v. Miller,* 98 Wash. 601, 168 Pac. 179, we cited the language of §5918, Rem. Code, to the effect that:

"The husband . . . shall not sell, convey, or encumber the community real estate, unless the wife join with him in executing the deed or other instrument of conveyance by which the real estate is sold, conveyed, or encumbered, and such deed or other instrument of conveyance must be acknowledged by him and his wife."

We then said:

"Hence it has consistently been held that a contract to lease community land, made by a married man without his wife joining him in the manner provided by the last quoted section, the lessee knowing of its community character, is clearly in contravention thereof." (Citing authorities.)

We quoted, with approval, the above language in the recent case of *Hinkhouse v. Wacker,* 112 Wash. 253, 191 Pac. 881, 195 Pac. 218.

Expenditures by respondents are also relied upon as part performance rendering the proposed extension of lease binding for the new term upon both spouses, citing *Matzger v. Arcade Bldg. & R. Co., supra,* which is

distinguished from this on the grounds stated in *Grubb v. House,* 93 Wash. 200, 160 Pac. 421:

"In support of this cause of action, the case of *Matzger v. Arcade Building & Realty Co.,* 80 Wash. 401, 141 Pac. 900, L. R. A. 1915 A 288, is cited; but that case is distinguishable. There 'A,' the tenant, at the time of making the lease, paid a consideration which went to the entire term in addition to the rental to be paid at stated periods throughout the term; 'B' put in a new front in the storeroom upon the faith of the lease; and 'C,' the manager of defendant company, recognized the lease as valid within one year prior to its expiration. In this case, no consideration was paid for the lease which went to the entire term, no recognition of the lease as valid was made within one year prior to its expiration, and no permanent improvement was made by the lessee . . .

"No authority has been presented which would sustain the proposition that the good will of a business may operate as a permanent improvement to the freehold so as to remove the bar of the statute of frauds. The very nature of the good will is such that it could not well be considered permanent."

Here, respondents entered into possession under the valid, unexpired lease, having eighteen months to run. The expenditures, except those for the coal-burning heaters, were such as the lessee had to make under the lease, except that interior painting was done instead of tinting; and the coal burners were voluntarily installed and are removable. Hence, such expenditures are not such as to constitute part performance and create estoppel, as in the *Matzger* case.

From the foregoing, it follows that the judgment of the trial court must be, and it is, reversed, with direction to enter judgment for appellants.

MOUNT, MITCHELL, TOLMAN, and MAIN, JJ., concur.