[No. 19214.  Department One.  June 29, 1925.]

NORTHWESTERN LUMBER COMPANY, *Appellant,* v. M. E. BLOOM *et al., Respondents.*[1]

EASEMENTS (18)—EXTENT OF RIGHTS—CONTRACT—CONSTRUCTION. A contract giving a logging company the right to use a tract fifty feet in width for a logging dump, and a forty-foot right of way, with sufficient ground for a spur track "back of the dump," does not grant a strip ninety feet wide for the dump and track.

SAME (18).  Such a contract does not, by necessary implication, grant the right to use stumps outside the fifty-foot tract to attach guy wires for a gin pole used at the dump, where there was another method of dumping without use of a gin pole.

HUSBAND AND WIFE (69)—COMMUNITY PROPERTY—CONTRACTS BY HUSBAND.  No rights are acquired under a contract to use community real estate which the wife refused to sign.

SAME (70)—COMMUNITY PROPERTY—ESTOPPEL TO ASSERT INVALIDITY.  A wife is not estopped to object to the use of community real estate under a contract which she objected to and refused to sign, where it does not appear that the agreed upon consideration was paid to the community, or that the wife acquiesced in the use of the premises, or knew that improvements were being placed upon the property in question.

Appeal by plaintiff from a judgment of the superior court for Grays Harbor county, Griffiths, J., entered October 31, 1924, in favor of both parties in certain particulars, in an action for an injunction, tried to the court.  Affirmed.

*John C. Hogan,* for appellant.

*J. M. Phillips* and *T. H. McKay,* for respondents.

[1] Reported in 237 Pac. 295.

MAIN, J.—By this action, the plaintiff sought an injunction prohibiting the defendants from interfering with its logging operations in certain particulars. The defendants countered with a cross-complaint, asking for an injunction prohibiting the plaintiff from making certain uses of their land without the legal right to do so. The cause was tried to the court without a jury, and resulted in a decree sustaining the contention of each of the parties in certain particulars. From this judgment, the plaintiff appealed. No appeal was prosecuted by the defendants and cross-complainants.

The facts are these: The respondents M. E. Bloom and Laura A. Bloom are husband and wife and are the owners of eighty acres of logged-off land, a small portion of which is cultivated and upon which they reside. The appellant operated a sawmill in the city of Hoquiam and owned timber land to the north of the land owned by the respondents. Through the respondents' land there ran what was called Campbell's Slough, which was a stream about one hundred feet wide in which the tide ebbed and flowed and was adapted to the floating of logs. It emptied into Grays Harbor. The appellant, desiring to log its timber, sought to acquire a right of way across the land of the respondents for a logging railroad to a point where the logging road would reach Campbell's Slough. To this end, on June 1, 1920, an agreement was entered into between the appellant and the respondents whereby there was granted to the appellant a right of way for a logging railroad forty feet in width. There was also granted to the appellant the right to construct a dump where the logging road met the slough, upon a strip of land there at least fifty feet in width. The appellant agreed to pay the respondents $1,000 for the first two years, $50 a month for the third year, and $40

a month for all times thereafter. This agreement was signed by the appellant and Mr. and Mrs. Bloom.

After the contract was entered into, the appellant constructed its logging road and dump. In constructing the dump it was necessary to dredge the slough, and the debris taken therefrom, in part at least, was deposited on the land of the respondents outside of the fifty-foot strip. The logs were removed from the cars to the dump by means of a gin pole. To sustain the gin pole, guy wires were anchored to stumps some distance from the foot thereof, and the anchorage of the guy wires was outside of the fifty-foot strip mentioned in the contract. Some time later, the parties entered into a second agreement whereby the appellant was given the right to build a warehouse at or near where the dump was constructed. This agreement was signed by the appellant and by Mr. and Mrs. Bloom.

On March 15, a third agreement was made, which was signed by the appellant and by Mr. Bloom alone, Mrs. Bloom having refused to sign it. By this agreement, the appellant, for the consideration of $150, among other things, was given the right of constructing such buildings as might be necessary for its logging purposes. Thereafter it constructed a number of buildings for the purpose of housing its employees. These agreements will be hereinafter referred to more in detail. Some time prior to April 1, 1924, when the present action was instituted, Mr. Bloom was threatening, among other things, to blow out the stumps to which the appellant's guy wires were attached, and this caused the appellant to bring the action seeking to restrain interference with its operations.

The judgment entered by the trial court prohibited the making use of the respondents' land outside of the fifty-foot strip for the purpose of dumping debris or

anchoring guy wires, and also prohibited any use of the property under the third agreement.

The appellant's first point is that, under the terms of the first agreement, it had a right to a strip of land at the dump ninety feet wide instead of fifty. The question of the guy wires and the dumping of the debris are treated separately in the briefs; but, as they are controlled by the same consideration, we will consider them together. The first inquiry is as to the right of the appellant under the first agreement so far as it applies to the width of the strip of land which the appellant was entitled to use at the dump. That contract provided that:

"Parties of the first part [respondents] hereby grant and give unto party of the second part [appellant], the right and privilege of constructing and operating a log dump in Campbell's Slough, in front of the above described property and the right of booming and rafting logs in said Campbell's Slough, in front of said property.

"Parties of the first part hereby give and grant unto the party of the second part, for its said log dump, a strip of land at least fifty (50) feet in width from the line of the said dump, the intention being that the party of the second part shall have sufficient ground to construct a spur back of its said logging dump."

Another provision of the contract gave the appellant "a right of way for logging railroad, forty (40) feet in width." The contract does not seem to be ambiguous. The appellant had a right of way forty feet wide for its logging railroad, and at the dump it was entitled to a strip of land fifty feet in width. It is plain that this fifty was not to be added to the forty, because the contract says that "the appellant shall have sufficient ground to construct a spur track back of its logging dump."

It is argued that the respondents acquiesced in the dumping of the debris outside of the right of way and the anchoring of the guy wires, but this position cannot be sustained. The house in which Mr. and Mrs. Bloom resided was something like two thousand feet distant. There is no evidence that Mrs. Bloom at any time knew that the guy wires were anchored outside the fifty-foot strip, or that the debris was dumped outside of that strip. It is obvious that, from the place where they lived, by looking across the logged-off land, even though she could see the point where the dump was constructed, she could not tell that the debris was being deposited outside of the right of way, and the guy wires were also being anchored to stumps beyond the line where the appellant had rights under its contract.

There is a further argument that, as to the guy wires, they were necessary to the dumping of the logs, and therefore the right to make use of the stumps as anchorage was within the meaning and spirit of the agreement or should be implied therefrom. The evidence shows that there is another method of dumping logs other than by means of a gin pole. The anchoring of the guy wires was a convenience and was not a thing which was necessary to the beneficial enjoyment of the right which the appellant acquired under the contract.

In *Jemo v. Tourist Hotel Co.*, 55 Wash. 595, 104 Pac. 820, 19 Ann. Cas. 1199, 30 L. R. A. (N. S.) 926, it was said:

"While not stated in direct terms in any of the cases, the doctrine of an implied easement is founded on the intention of the parties, not expressed, but to be gathered from all the surrounding circumstances. If the right claimed is necessary to the enjoyment of the property as contradistinguished from beneficial, it will be implied."

The contract not being ambiguous, the intention of the parties must be derived from such construction as can be reasonably given to the language used and to all the circumstances surrounding the transaction, including the situation of the parties, the subject-matter and the subsequent acts of the parties under it. *Kalinowski v. Jacobowski,* 52 Wash. 359, 100 Pac. 852. As stated, the contract shows that it was the intention of the parties that the appellant should have the right to use a fifty-foot strip at the dump and no more.

The other point brings up the question as to the rights of the appellant under the third agreement, which was not signed by Mrs. Bloom. This contract provided that, "for and in consideration of One Hundred Fifty Dollars," the appellant should have "the right and privilege of constructing such buildings as it may deem necessary for its logging purposes on lands of party of the first part now lying adjacent to the logging railroad right of way of party of the second part as the same is now surveyed and located on the land of party of the first part . . ." The land of the respondents which was being made use of by the appellant was community property. When this third agreement was presented to Mrs. Bloom, she refused to sign it. The appellant, notwithstanding this fact, and charged with knowledge that the property was community, proceeded to construct the buildings and expended therein a considerable sum of money. Under this contract, the appellant acquired no rights to make use of the community real estate.

It is argued, however, that Mrs. Bloom is estopped from objecting to the buildings. There is no basis for the application of the doctrine of estoppel. She disapproved of the contract at the time it was made and did not subsequently ratify it. The evidence fails to show that the consideration of $150 mentioned in the

contract was ever paid. There was paid $1,000 at the time the first contract was entered into, which covered the first two years. On June 8, 1922, a second $1,000 was paid and the receipt recited that it was "in advance to July 1, 1924, and agreement dated March 5, 1922." Under the terms of the contract, there would have accrued up to July 1, 1924, $1,080. It is not claimed that more than $1,000 was paid at the time the receipt was given, but it is claimed that the $150 was included in that. Upon this question, the evidence is in dispute and we are inclined to the view that the $150 has not been paid. Therefore it cannot be said that the consideration for that agreement was ever paid to the community or one member of it. As stated, there is no evidence that Mrs. Bloom was ever at the place where the dump was constructed and the houses erected. The appellant's witnesses testified that from the place where the respondents live you could look across the logged-off land and see the operations. The evidence of Mrs. Bloom is that she did not know what was going on at the place where the dump was constructed. Without the consideration being paid, and without previous authorization by Mrs. Bloom or subsequent ratification, it cannot be held that the appellant has sustained its claim to the use of the property based upon the ground of estoppel. *O'Connor v. Jackson,* 33 Wash. 219, 74 Pac. 372; *Washington State Bank of Ellensburg v. Dickson,* 35 Wash. 641, 77 Pac. 1067.

The judgment will be affirmed.

TOLMAN, C. J., PARKER, and ASKREN, JJ., concur.

BRIDGES, J. (concurring)—If the owner of land stands by and, without complaint or objection, sees another, acting under a supposed right, put temporary improvements on his land at very considerable expense, the law ought to be, and I believe it is, that

equity will not give him any relief by way of a mandatory or other form of injunction, but will relegate him to his right of damage in an action at law. At the time of the argument, I thought that the respondents were in the position above indicated. After reading the testimony, I am convinced that Mr. Bloom did know that the appellant was putting these improvements on the land and raised no objection, but I am likewise convinced that the testimony fails to show that Mrs. Bloom had such knowledge. I think, therefore, that the conclusion reached in the foregoing opinion is correct.