[No. 19538. Department One. April 8, 1926.]

CLARK BUSH *et al., Appellants,* v. H. H. QUAIFFE *et al., Respondents.*[1]

[1] HUSBAND AND WIFE (67)—COMMUNITY PROPERTY—SALE BY HUSBAND—CONSENT OF WIFE. Specific performance of a trade of community lands upon the oral agreement of the husband cannot be decreed where the wife at all times refused to consent or agree to the trade and never ratified it.

[2] SPECIFIC PERFORMANCE (54)—RELIEF — RECOVERY OF DAMAGES. Where a court of equity cannot decree a specific performance of the husband's oral agreement to trade community lands because the wife refused to consent thereto, it cannot award money damages for breach of the contract.

Appeal from a judgment of the superior court for Cowlitz county, Kirby, J., entered May 18, 1925, in favor of the defendants, in an action for specific performance. Affirmed.

*Miller, Wilkinson & Miller,* for appellants.

*Atwell & Moore* and *Jos. O'Neill,* for respondents.

ASKREN, J.—This is an action to compel specific performance of a three-way oral contract for the exchange of lands. From a judgment in favor of the defendants, plaintiffs have appealed.

The facts, briefly, are as follows:

Appellants Bush and wife, are the owners of an eighty-acre farm in Clark county; appellants Wilson and wife of an eighty-acre farm in Clark county, and respondents Quaiffe and wife of two hundred and sixty acres in Thurston county. In the early summer of 1924 there was an attempted trade between the owners of the Bush land and the owners of the Quaiffe land. This deal was not consummated. Shortly thereafter another attempt to trade was made with added consideration. This deal also fell through.

[1]Reported in 244 Pac. 704.

These attempted deals were handled through a real estate firm, known as the Columbia Investment Company. They proposed another deal, whereby the Quaiffe land should go to the Wilsons, the Wilson land to the Bushes, and the Bush land in turn to be deeded to the Quaiffes. Practically all the negotiations in connection with this deal were handled through the Columbia Investment Company. No written contract was ever entered into, but the parties proceeded to get the deal in shape by investigating the properties and having abstracts brought down to date. Before the abstracts of the Quaiffe land were completed and ready for examination, respondent H. H. Quaiffe, who had done all the negotiating, as far as respondents were concerned, with reference to the trade, became dissatisfied, because the real estate firm, who handled the matter, received certain moneys to be paid on a mortgage which stood upon the Bush land, and which was purchased by Quaiffe. He also claimed that he learned that, in the three-way exchange of the property, the real estate firm was to receive eighty acres of the Quaiffe land for making the deal. About this time Bush moved onto the Wilson property, and Wilson moved to Seattle, where he purchased a home, and arranged to go into business. When respondents Quaiffe refused to deliver their property, this action was brought to compel specific performance.

The trial court refused relief upon two grounds: (1) that there had been no part performance of the contract sufficient to take the oral agreement out of the statute of frauds; and (2) that the property was community property and that Mrs. Quaiffe never consented or agreed to the trade.

In order to avoid incumbering the decision with a large number of facts which are unnecessary to this

decision, we have purposely omitted stating many of the facts and circumstances which appellants deem, and which are, important in determining whether or not there was any part performance of the oral contract, for it is our view that the decision of the trial court can safely be rested upon its second holding, that Mrs. Quaiffe never consented or agreed to the exchange. Therefore we shall discuss only that question.

[1] A careful examination of the record discloses that Mrs. Quaiffe at all times objected to any such trade. There is some testimony upon the part of appellants to indicate a state of mind, justifying the belief of the real estate agent that, perhaps, she might be persuaded to agree to some of the propositions that were put to her by them, but there is abundant testimony in the record to show that she always refused, and never at any time consented to the deal. The evidence shows that the real estate firm in question doubted somewhat whether Mrs. Quaiffe would ever agree to the deal, and there is evidence to the effect that Mr. Quaiffe assured them that he could get his wife to agree to it, that she would do what he said. This testimony established in the mind of the trial court, as it does in ours, that Mrs. Quaiffe never consented or agreed to trade, and that she had never acquiesced in or ratified any portion of the oral contract. It was stipulated that the property was the community property of Quaiffe and wife, and it appears that the title to the land stands in the name of Mrs. Quaiffe.

It is well settled by our decisions that an oral contract by the husband to sell or incumber community property cannot be enforced against the wife against her will. Our various holdings thereon are collated in *Kaufman v Perkins,* 114 Wash. 40, 194 Pac. 802.

Nor do we find any evidence in the record to justify any rule of estoppel against the wife to object to the exchange.

[2] Appellants assert that, even if the court cannot decree specific performance, because Mrs. Quaiffe never consented to the contract, at least a court of equity can award damages for the breach of the contract. But it seems plain that, if Mrs. Quaiffe was not a party to the contract, and has not by conduct estopped herself, that money damages could not be awarded. *Chamberlain v. Abrams,* 36 Wash. 587, 79 Pac. 204; *Trimble v. Donahey,* 96 Wash. 677, 165 Pac. 1051.

The judgment is affirmed.

TOLMAN, C. J., HOLCOMB, FULLERTON, and MACKINTOSH, JJ., concur.