[No. 9053.    Department Two.    February 7, 1911.]

LETTIE WILKINSON, *Appellant*, v. AUGUSTA BERGQUIST, *Respondent*.[1]

PRINCIPAL AND AGENT—NOTICE TO AGENT—EXISTENCE OF RELATION — EVIDENCE — SUFFICIENCY. In an action to foreclose a chattel mortgage, brought against a vendee of the property who had assumed payment of the notes secured by the mortgage, the vendee is bound by the notice and the knowledge of a person employed by the vendee to represent her in securing the mortgagee's consent to the sale and to ascertain the amount due on the notes and mortgage assumed by her, even if such person had acted as a broker or agent for the vendor in effecting the sale; and the evidence is sufficient to establish such relation of principal and agent, where the vendee authorized her son-in-law to represent her in closing the deal and he employed such person to assist him in the matter.

Appeal from a judgment of the superior court for Pierce county, Shackleford, J., entered June 28, 1910, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action to reform a chattel mortgage and for a foreclosure. Reversed.

*Burkey, O'Brien & Burkey*, for appellant.

*Frank H. Kelley*, for respondent.

MORRIS, J.—Action to reform a chattel mortgage and for a foreclosure. Upon the trial below there was no dispute as to the facts upon which the reformation was asked, and the same was granted; the dispute being as to the amount unpaid as between the parties, upon which issue the court found for respondent, and entered judgment in her behalf, denying a foreclosure, from which this appeal is taken. The notes and mortgage to secure the same were given December 21, 1906, to secure the amount due upon the furniture of a rooming house at Tacoma. There were forty notes, each in the sum of $30, payable successively on the 21st of each succeeding

[1] Reported in 113 Pac. 255.

month, with interest at ten per cent, except the fortieth and
last note which called for a payment of $19.55.   In April,
1909, the rooming house was owned by a Mrs. West, subject
to the amount then due upon the notes and mortgage.   The
respondent, desiring to purchase a rooming house, consulted
with Mr. Bruggeman, a real estate broker, to procure one
for her, and in a day or two Bruggeman called to the atten-
tion of respondent the fact that Mrs. West desired to sell
her house, and was directed by respondent to consult with
her son-in-law, Munro, whom she authorized to act for her in
the negotiations, and who thereupon took up the matter in
her behalf.   The purchase price as fixed by Mrs. West was
$1,150, purchaser to assume the amount then due upon the
notes, the balance to be paid to her in cash, which terms
were accepted by respondent.   Thereupon Munro directed
Bruggeman to ascertain the amount due upon the notes, and
for that purpose Bruggeman went to a bank where the same
were held for collection, and made inquiry and says he was
there told the amount then due, which he communicated to
Munro.   He does not recall what that amount was, nor what
was said to him at the bank; but whatever information he
received he communicated to Munro.

At this time the last fourteen notes were unpaid, making
$409.55 then due, with interest on each note from December
21, 1906.   Munro then had a bill of sale prepared in which
the purchase price was fixed at $423.41, which amount was
ascertained by taking the principal at $409.55 and adding
interest from December 21, 1908, to April 14, 1909, the date
of the bill of sale, upon the theory that the interest was pay-
able annually and had been paid up to December 21, 1908;
when in fact the interest was not so payable, the interest
upon each note being payable at its maturity.   Munro in-
structed Bruggeman to obtain respondent's consent to the
transfer, and for that purpose he called upon her at her
home.   Respondent called in Mr. Hallowell, her business
agent, to whom the bill of sale was submitted.   Hallowell as-

certained from Mrs. West, who was present, that thirteen $30 notes and the $19.55 note were then unpaid, and explained to Bruggeman that $423.41, the amount fixed in the bill of sale, was not the correct sum then due, but that such sum should be $409.55 principal and interest added; that it would take some time to figure the interest on each note, and that he would change the consideration from $423.41 to $409.55, and the interest could be properly ascertained at the bank where the notes then were. The figures $423.41 were then changed to $409.55 wherever they occurred in the bill of sale, and also in the consent to the transfer upon the back thereof, and respondent then signed the consent. In making this change the word "interest" was not erased, so that instead of reading "$409.55 with interest, according to the terms of the notes," it read, "upon which there is due a balance of principal and interest of $409.55," and in the consent to the transfer it read, "that the balance due thereon, including principal and interest to this date, amounts to $409.55." Hallowell is corroborated in his testimony that it was the real intention, and so understood by all, that the $409.55 represented only the principal due December 21, 1908, upon which the interest was to be computed by respondent and her daughter. Bruggeman says there was something said to Hallowell and some statement made as to the amount then due, which was given as the reason for making the change, but he does not recall what it was. He saw the change made, but his memory failed him as to why it was done, or what was said in connection therewith. He, however, returned the bill of sale to Munro, who paid Mrs. West the difference between $1,150 and $409.55. Munro admits, before closing the sale, he knew the principal of the fourteen notes then unpaid amounted to $409.55, and that the notes bore interest at ten per cent, but says, while he knew the notes bore interest, his idea was that respondent would only be liable for such interest from the day she assumed their payment. After closing the transaction with Mrs. West,

Munro and Bruggeman went to the bank and Munro paid and took up the first note, paying the principal sum of $30 and the interest from December 21, 1906, amounting to seven dollars, and thereafter from May 1 to October 15, Munro took up six other notes, upon each of which he paid interest from December 21, 1906, telling Mr. Burkey, of counsel for appellant to whom two of the notes were paid, "that he guessed he had got stuck for that back interest, but that he would have to pay it."

Munro is admitted to have been respondent's agent in the transaction. His knowledge and his acts would be her knowledge and her acts. The question for us to determine on this appeal is, whom did Bruggeman represent; and to what extent, if any, is respondent bound by his knowledge and his acts. The court below found, to which no exception was taken, that Munro as the general agent for respondent had full authority from her "to employ all persons by him deemed convenient in making said purchase and closing said deal." We think such finding is justified by the evidence, and that under such authority Munro obtained and made use of the services of Bruggeman. Respondent enlisted the services of Bruggeman in the first instance to find a rooming house for her. In making such a search, he was certainly acting for her. He found the West house, and reported the same to her. She thereupon substitutes Munro for herself, and directs Bruggeman to continue negotiations on her behalf with Munro, giving Munro full power to represent her. Munro sends Bruggeman to the bank to find out the balance due. He sends him to appellant with the bill of sale to obtain her consent. He takes him to the bank to make the first payment. His entire activities in the transaction were in representing the purchase, and not the sale, of this property, and as such he was broker for respondent, who in her turn was represented by Munro. The knowledge he obtained at appellant's home as to the true amount due being $409.55 with interest on the several notes, his acceptance of the bill of sale with appellant's

consent thereon, obtained only after and in consideration of the changed figures, the substitution by consent of all of the $409.55 for $423.41 as originally fixed in the bill of sale, which is clearly established by the uncontroverted evidence of three witnesses and which although admittedly taking some part in the transaction he does not dispute, only saying something was said but he does not recall what it was, would be the act of respondent and bind her to the substitution. The payment upon the same day by Munro and Bruggeman of the first note due, with an added interest payment from the time appellant contends it was understood and agreed, leads us to the conclusion that, as the agent of respondent, he did enter into the understanding and agreement whereby $409.55, with interest on the several notes from December 21, 1906, was substituted for $423.41. This conclusion is confirmed by the subsequent acts of Munro in paying six of these notes with added interest from the same date.

It was the opinion of the trial court that Bruggeman was the agent for Mrs. West. As between Mrs. West and respondent this might be true, but as between respondent and appellant, he acted for respondent. If he was the agent for Mrs. West in closing the deal with respondent, after such negotiations had ended and the arrangement for the transfer of the property fully made and agreed upon, he could then act as the agent for respondent in the subsequent dealings with appellant, there being no adverse interest in that transaction between respondent and Mrs. West. That he did so represent respondent is further evidenced by the persons present at that transaction; Mrs. West representing herself, Mr. Hallowell representing appellant, and Bruggeman representing respondent—not assuming to represent her without authority, but sent there for that express purpose by Munro.

For these reasons, the judgment of the lower court is reversed, and the cause remanded for further proceedings as prayed for by appellant.

Dunbar, C. J., Rudkin, Crow, and Chadwick, JJ., concur.