[No. 25743.   *En Banc.*   February 11, 1936.]

MABEL FLETCHER, *as Guardian of Ella Loftus, Incompetent, Respondent,* v. FRANK MILLER *et al., Appellants.*[1]

*Geo. H. Crandell,* for appellants.

*Lloyd R. Savage* and *James C. McKnight,* for respondent.

BLAKE, J.—For some thirty years or more prior to November 5, 1932, Ella Loftus was the owner of a plot of ground at the southeast corner of Sixty-seventh

[1]Reported in 52 P. (2d) 304.

street and Roosevelt way, Seattle. On that day, she signed an instrument, purporting to be a lease and option on the property, in which defendant Miller was named as lessee. The instrument was unacknowledged. The term demised was for ten years from December 5, 1932, at a rental of fifty dollars per month. The option was for $17,500, and was to be exercised within three years. If exercised, it was payable five thousand dollars down and balance in ten years, with interest at six per cent. It was provided that, in case the option was exercised, rent paid should be credited on the purchase price.

Two hundred dollars was paid by Miller when the instrument was executed, to apply on the rent reserved. The property stood several feet above street level. It was provided that the lessee should retain the rent reserved for the last four months of the first and second years demised, to defray the cost of cutting the lot down to street grade.

At the time the instrument was executed, there was pending in the superior court of King county an application for the appointment of a guardian for the estate of Ella Loftus. The petition for guardianship had been filed March 17, 1931, by Mabel Fletcher, sister of Miss Loftus. An order appointing Mrs. Fletcher guardian was entered February 8, 1933. Shortly after that, Mrs. Fletcher, as guardian, served notice on Miller and his sublessee, Red Lion Caterers, Inc., of cancellation of the so-called lease.

In the meantime, Miller had taken possession of the property, and had made and was making extensive improvements thereon, the ultimate cost of which was in excess of five thousand dollars. Miller and Red Lion Caterers, Inc., refusing to comply with the demand for cancellation, the guardian instituted this action. The guardian alleged that, on November 5, 1932, and for

many years prior thereto, Ella Loftus was insane and incapable of managing her own affairs; that defendant Miller was chargeable with knowledge of her condition.

Upon trial, the court found that Ella Loftus was, at the time she signed the purported lease, "mentally unfit to engage in any business transaction whatsoever, and that her mental incapacity was known to the said defendant, Frank Miller, through his agent." A finding was also made that the improvements put upon the property by the lessee were physically capable of removal.

Decree canceling the lease was entered August 21, 1934. The decree provided that defendants should have the right to remove the improvements from the property upon payment of $1,175 into the registry of the court within fifteen days. Title to the improvements was decreed to be in plaintiff, upon failure of defendants to comply with the condition for removal. The amount of $1,175 was ascertained as the balance due for rent, at the rate of seventy-five dollars per month, up to September 5, 1934, after giving defendants credit for two hundred dollars paid when the lease was executed and two hundred dollars as credit for reducing the lots to grade. The decree further provided that for any additional period the defendants occupied the property they should pay rent therefor at the rate of seventy-five dollars per month.

The defendants have appealed, making fifteen assignments of error. The assignments of error are presented under three heads: (1) Was the instrument, executed by the parties on November 5, 1932, void by reason of the fact that it was not acknowledged? (2) Did Ella Loftus have the mental capacity to execute it? (3) If not, was Miller chargeable with knowledge of her incapacity?

In view of the conclusion we have reached on the second and third questions, we shall assume that there was such substantial performance of the lease, extending to the entire term, as to bring the case within the rule of *Matzger v. Arcade Building & Realty Co.,* 80 Wash. 401, 141 Pac. 900, L. R. A. 1915A 288; *Zinn v. Knopes,* 111 Wash. 606, 191 Pac. 822; and kindred cases.

The question of mental competency is essentially one of fact. Before discussing the facts in the case, we should advert to two frequently stated principles: (1) Where a condition of general insanity is once shown to exist, the presumption is that it continues; and the burden of proof to establish a lucid interval or mental restoration rests upon the party who asserts it. *In re Brown,* 39 Wash. 160, 81 Pac. 552, 109 Am. St. 868, 1 L. R. A. (N. S.) 540; *Criez v. Sunset Motor Co.,* 123 Wash. 604, 213 Pac. 7, 32 A. L. R. 627. (2) Where the evidence does not preponderate against the findings of the trial court, this court is not warranted in disturbing the judgment. *In re Jones' Estate,* 178 Wash. 433, 34 P. (2d) 1111. With these rules in mind, we shall consider the evidence.

At the time the instrument was executed, Ella Loftus was between sixty-five and seventy years of age. Most of her life had been spent in domestic service. In 1912, she was committed to the Western Washington Hospital for the insane, at Steilacoom. When she was released and whether she was paroled or discharged as cured, do not appear from the record. In any event, she was committed to the Northern Hospital, at Sedro-Woolley, in 1922. After remaining there for a few months, she was given into the custody of relatives, upon condition that she be taken out of the state. She was taken to California, where she remained for eight years. Most of this time she lived on

a ranch belonging to her sister and brother-in-law. There is evidence to the effect that she threatened violence to neighbors; that, as a result of such threats, the sheriff made an investigation and directed Miss Loftus' relatives not to allow her to leave their premises.

She returned to Washington about 1930. Before leaving California, she did domestic work for a short time in two different households. Since returning to Seattle, she has been employed as a domestic in a household where there are two small children. Both the father and mother of the children are engaged in business, so that Miss Loftus was charged with responsibility for the house and children during the day. It also appears that she was charged with the responsibility of ordering for the table. The grocer with whom she traded and his clerk both testified that she was a canny buyer, and that they considered her to be of sound mind. Neither the husband nor wife, for whom she was working, testified. Nor was there any evidence by alienists.

So it will be seen that the extraneous evidence of Miss Loftus' mental condition was extremely meager and, to us, most unsatisfactory. But she herself testified. How she appeared on the witness stand, we can only infer from the ultimate findings as to her condition, as entered by the trial court. From a reading of her testimony, however, we are satisfied that she could not grasp the import of the instrument, either as to character or contents, which she signed November 5, 1932. On such a record as this, "we are left with no certain guide to the truth except as we may rely upon the judgment of the trial court." *In re Jones' Estate, supra.* In face of the finding of the trial court, we are unable to say that appellants sustained the burden of

proving restoration of the mental competency of Miss Loftus.

We are satisfied that the finding of the trial court, to the effect that Miller was chargeable with knowledge of Miss Loftus' mental condition, is supported by a preponderance of the evidence. The property had been listed for some time with T. J. Halohan, a real estate agent. He had been told some time before, by Miss Loftus' relatives, that she was mentally incompetent and could not manage her own affairs. While Halohan testified that he was satisfied, from his own observation, that she was competent, he heeded the warning on a previous occasion when he was trying to work out a lease and option on the property. At that time he refused to deal with her until she had sought and obtained advice from independent counsel, who drew the proposed lease.

On the present occasion, Halohan was approached by one Thompson, an emissary of Miller's. Through Thompson, Miller made his offer of lease. Halohan drew the lease along the lines of the offer, and submitted it to Miss Loftus, who signed it. Within a day or two, an attorney, acting in behalf of Miss Loftus, notified Halohan that the lease and option would not be carried out. Within three or four days, the attorney met Thompson and advised him to the same effect —that Miss Loftus was mentally incompetent. Miller was chargeable with the knowledge of Halohan and Thompson. 21 R. C. L. 838; *Wilkinson v. Bergquist,* 62 Wash. 119, 113 Pac. 255; *Rothchild Bros. v. Northern Pacific R. Co.,* 68 Wash. 527, 123 Pac. 1011, 40 L. R. A. (N. S.) 773.

Yet, in face of this situation, and despite the fact that the term demised was not to commence until December 5th, Miller immediately went into possession of the property and began to make improvements.

While we are not disposed to question the trial court's finding that Miller acted in good faith, it does occur to us that his haste in taking possession and in making improvements might have been prompted by a desire to validate the unacknowledged lease, under the rule of *Matzger v. Arcade Building & Realty Co., supra*. In any event, in the light of the warnings to his agents, he assumed the risk of loss attendant upon acting under a lease which, on its face, was invalid.

In entering its decree, the court endeavored to put the parties in *statu quo*. The decree accomplished this as near as may be. It will, therefore, be affirmed. But the appellants shall have thirty days from the time the remittitur is filed to avail themselves of the right to remove the improvements, under the conditions imposed by the decree.

MILLARD, C. J., MAIN, MITCHELL, TOLMAN, GERAGHTY, and STEINERT, JJ., concur.

BEALS and HOLCOMB, JJ., concur in the result.