[No. 13954.   Department Two.   October 20, 1917.]

JOHN SPREITZER et al., Appellants, v. WALTER A. MILLER
et al., Respondents.[1]

HUSBAND AND WIFE — COMMUNITY PROPERTY—LEASE BY HUSBAND
ALONE—VALIDITY—PART PERFORMANCE—ESTOPPEL OF WIFE. An un-
signed written lease or an oral agreement for a lease of community
property for a term of years cannot be established for the full term
by part performance, ratification, and estoppel, as against the wife
not bound by deed; since the same contravenes Rem. Code, §§ 8745
and 5918, requiring conveyances of real estate to be by deed and pro-
viding that the husband shall not sell or convey community prop-
erty unless the wife join with him in executing the deed, and the
same is good only as a tenancy from month to month or from period
to period on which rent is payable.

LANDLORD AND TENANT — LEASE — TERMINATION — HOLDING OVER.
Under Rem. Code, § 813, a holding over of agricultural lands for
more than sixty days after expiration of any annual rent period
continues the tenancy for another crop year or rent period; but an
oral lease may be terminated by notice given at the prescribed time
before the end of the period.

SAME—LEASE — VALIDITY — PAYMENT OF RENT AS PART PERFORM-
ANCE. The payment and acceptance in advance of a large sum of
money for an oral lease for a term of years cannot be treated as
purchase money for a title but only as additional rent.

Appeal from a judgment of the superior court for Walla
Walla county, Mills, J., entered March 2, 1916, upon the
verdict of a jury rendered in favor of the defendants, in an
action of unlawful detainer. Reversed.

*Sharpstein, Pedigo, Smith & Sharpstein* and *J. W. Brooks,*
for appellants.

*Rader & Barker,* for respondents.

HOLCOMB, J.—Appellants, by unlawful detainer proceed-
ings, sought to recover possession of agricultural lands de-
scribed in their complaint. At the close of the evidence, ap-
pellants unsuccessfully moved for a verdict to be directed in

[1]Reported in 168 Pac. 179.

their favor. The verdict of the jury in favor of respondents resulted, as appellants claim, from erroneous instructions.

The lands in question were under lease by appellants to one Rudio on January 17, 1910, for a term of five years commencing October 5, 1909, and terminating October 5, 1914. Before the end of the term and while in possession under the lease, on about March 1, 1913, Rudio sold to respondents a lot of personal property and the plowing and summer fallowing on the leased premises; and also, on March 17, 1913, Rudio and wife executed an instrument in writing and acknowledged as a deed, by which they released, relinquished, and quitclaimed to appellants all their right, title and interest in and to the lands in question and their leasehold. This instrument was left in escrow by Rudio and respondents pending final arrangements between them and appellants. There was also drawn a new lease, to be executed by appellants and respondents, whereby the same premises were to be leased by appellants to respondents for a term commencing March 17, 1913, and ending October 5, 1914, with the option to respondents of renewing the lease at its expiration for a period of three years "if they so desired." Mrs. Spreitzer, for some reason, refused to join in the execution of the new lease to respondents, and it was never executed by her, but was by her husband alone.

It seems to be undisputed that the real estate is community real estate of appellants. Respondents went into possession of the land on or about March 17, 1913, and remained in possession more than sixty days after the termination thereof on October 5, 1914, and continued to hold over and produce another crop. On October 6, 1915, appellants caused to be served on respondents a notice to quit and surrender the premises, as their lease had expired October 5, 1914, and that their subsequent holding over for a further period had expired October 5, 1915; tendering them the sum of $630 as the value of summer fallowing land on the premises for the ensuing crop, at a stipulated price of $2.50 per acre under

the provisions of the Rudio lease. It is here noted, however, that the same terms were specified in the new lease; in fact, all the terms were the same, except the parties and the option to renew in the new lease, and a difference as to furnishing sacks to contain the lessors' net portion of the threshed grain; the old lease providing that the lessees should furnish the sacks, the new one providing that they should be furnished by lessors. This last difference, however, is shown to have been a mistake of the scrivener's, and the respondents so understood and, while in possession, furnished the sacks for the lessors' portion. Both leases contained a condition against subletting or assignment by the lessees without the written consent of lessors. No written consent to any assignment by Rudio to respondents appears to have been given, and in appellants' notice to quit, served on respondents, there is a declaration that respondents "are operating under the lease of Rudio," purchased by respondents. When Rudio relinquished his lease, he owed appellants $1,900, which appellants required respondents to assume and pay, together with $100 additional, which they assumed, gave their note for, and afterwards paid in full. Respondents paid Rudio $7,850 for the stock and other personal property owned and used by them on the premises, and the $2,000 to appellants as consideration for the transfer to them of the stock, personal property and summer fallow and plowing on the place and a lease to them for a term of years.

Of all these facts and the transactions with Rudio on the part of respondents, appellants, including Mrs. Spreitzer, had knowledge. On March 17, 1913, respondents, with the knowledge of both appellants and without objection, went into possession of the premises. Mrs. Spreitzer had agreed to execute the lease to respondents, but long afterwards, on finding that there was something in it that the old agreement did not have, refused to sign it. During all the time respondents were in possession, the rent was regularly paid according to the terms of either lease, and received and accepted

without objection by appellant. The premises were properly farmed according to the stipulations in the lease.

The court submitted the case to the jury by instructions in accord with the theory of the defense, to the effect that, a preponderance of the evidence so justifying, a lease for a term of years, although required originally to be in writing and signed and acknowledged by the parties thereto, may be so effectually ratified, acquiesced in, and performed as to estop the dissenting party to question it, and be thereby established as effectively as though it had been executed with all the required formalities of law. The jury were charged that, if they found by a preponderance of the evidence that respondents occupied the premises under the new lease and not under the Rudio lease, and if they found that the new lease was binding upon Mrs. Spreitzer by her having agreed to execute it and respondents' occupying the premises for two years or more, farming them and returning rentals in accordance with the lease signed by John Spreitzer alone, the consent of Mrs. Spreitzer being then presumed and she estopped to deny the validity of the lease, and that respondents continued in possession and paid the rent to appellants according to the terms of the new lease after October 5, 1914, by and with the consent of appellants, such continuance would be an exercise of the option to lease the premises for the additional three years which would be binding upon all parties, no new lease in writing or notice thereof being necessary. Of this submission and instructions thereon, appellants complain.

That the relation of landlord and tenant between the parties was established is clear. But that it was not established under the original Rudio lease is equally clear, notwithstanding the subsequent declarations of appellants. The minds of all the parties, at the time of the transactions between them when Rudio surrendered possession, met upon the release of Rudio. He formally surrendered possession and released and relinquished his lease by a formal conveyance.

While it was nominally placed in escrow, all the evidence goes to substantiate the fact that the lessors assented to his surrender and that they accepted respondents as tenants in his place. The old lease was terminated and its functions had ceased. Nor can it be said that there was any form or substance of a transfer or assignment of his lease by Rudio to respondents. The nature of the instrument executed by him was not of that character, and respondents negotiated with appellants for a new lease to them which, according to their evidence, appellants agreed to give.

So far as the writer is concerned, were it an original question in this jurisdiction, he would feel inclined to declare such a state of facts as was shown and resolved by the jury in favor of respondents, particularly where the lessees actually purchased the term for years from the community for a large sum, sufficient to estop both members of the community of lessors to deny the validity of the lease for its full and optional term. Were they two joint owners of the premises, not a community, John Spreitzer would certainly be bound by his deed, and also by his acts and conduct. The other party, in such circumstances as here detailed, disregarding the mere payment and receipt of annual rent when due as an act of estoppel, ought to be bound by her acts, conduct, and silence. And since a married woman has by law (Rem. Code, § 5925) "the same right . . . to acquire . . . and dispose of every species of property . . . as if . . . she were unmarried;" and "contracts may be made by a wife, and liabilities incurred, and the same may be enforced by or against her to the same extent and in the same manner as if she were unmarried" (Rem. Code, § 5297), she should be bound by her acts, conduct, and silence as if a *feme sole*, to the same extent as any other person *sui juris*.

But, unfortunately, the statutes provide that all conveyances of real estate, or any interest therein, and "all contracts creating or evidencing any encumbrance upon real estate shall be by deed" (Rem. Code, § 8745), and "prop-

erty . . . acquired after marriage by either husband or
wife, or both, is community property" (Rem. Code, § 5917);
and "the husband . . . shall not sell, convey, or en-
cumber the community real estate, unless the wife join with
him in executing the deed or other instrument of conveyance
by which the real estate is sold, conveyed, or encumbered, and
such deed or other instrument of conveyance must be acknowl-
edged by him and his wife." (Rem. Code, § 5918.)  Hence
it has consistently been held that a contract to lease com-
munity land, made by a married man without his wife join-
ing him in the manner provided by the last quoted section,
the lessee knowing of its community character, is clearly in
contravention thereof.  *Holyoke v. Jackson*, 3 Wash. Terr.
235, 3 Pac. 841; *Hoover v. Chambers*, 3 Wash. Terr. 26, 13
Pac. 547; *Isaacs v. Holland*, 4 Wash. 54, 29 Pac. 976;
*Brownfield v. Holland*, 63 Wash. 86, 114 Pac. 890.

Consequently, as to the wife member of the community, the
facts here show that there was nothing more than an oral
agreement for a lease, and subsequent acts, silence, and con-
duct which ought to estop her to deny it.

But it has been established that, under the statute, an oral
lease or an oral agreement for a lease, being interdicted by
the statute, cannot be sustained as creating a tenancy except
when the lessee is let into possession and there has been part
performance, and then only as a tenancy from month to
month or from period to period.  *Richards v. Redelsheimer*,
36 Wash. 325, 78 Pac. 934; *Watkins v. Balch*, 41 Wash. 310,
83 Pac. 321, 3 L. R. A. (N. S.) 852; *Brownfield v. Holland*,
*supra*.  In the case of agricultural lands, where the tenant
enters under an invalid lease, every holding over for more
than sixty days after the expiration of any annual rent
period continues the tenancy for another crop year or rent
period.  Rem. Code, § 813; *Snyder v. Harding*, 38 Wash.
666, 80 Pac. 789; *O'Connor v. Oliver*, 45 Wash. 549, 88 Pac.
1025; *Watkins v. Balch*, and *Brownfield v. Holland*, *supra*.
And the end of a period is the time when the rent is payable.

*Snyder v. Harding, Watkins v. Balch,* and *O'Connor v. Oliver, supra; Dorman v. Plowman,* 41 Wash. 477, 83 Pac. 322.

Here the end of a period occurred on October 5, each year of occupancy, and holding 60 days thereafter. An oral lease can be terminated, as the statute provides, by written notice given at the prescribed time before the end of such period. *Watkins v. Balch,* and *Dorman v. Plowman, supra.*

Under our statutes and precedents, we cannot hold that an invalid, unsigned, and unacknowledged written lease, or an oral agreement to lease for a term of years, can be established for the full term by part performance, ratification, and estoppel as against the community owner not bound by deed. The payment and acceptance in advance of a large sum of money for a lease for a term of years cannot be treated as purchase money for a title, but only as additional rent.

The tenancy here in controversy was legally terminated by due notice. The case was improperly submitted to the jury upon the law. For the foregoing reasons, the judgment is reversed and a judgment ordered for the appellants upon their paying the amount of their tender.

ELLIS, C. J., PARKER, and MOUNT, JJ., concur.