[No. 15775.　Department One.　July 19, 1920.]

JOHN ZINN, *Respondent*, v. HENRY KNOPES *et al.,*
*Appellants.*[1]

HUSBAND AND WIFE (2, 2-1)—PROPERTY OF HUSBAND—LEASES—
EXECUTION BY WIFE. The wife need not sign a lease of the hus-
band's separate real estate.

FRAUDS, STATUTE OF (35)—LEASES—DESCRIPTION OF LANDS—POS-
SESSION. The going into possession and performance of the term
of a lease is sufficient to cure an imperfect description of the prem-
ises and take the contract out of the operation of the statute of
frauds.

SAME (54)—WAIVER OF BAR—PART PERFORMANCE—ESTOPPEL. An
unacknowledged lease for a period of three years will be held bind-
ing for the whole term, notwithstanding the statute of frauds, under
the principles of estoppel, where the lessee had performed acts
called for in the contract, making it inequitable to cancel the lease
and abandon increase in stock for which he had stored feed, and
which could not be marketed profitably.

Appeal from a judgment of the superior court for
Asotin county, Miller, J., entered November 24, 1919,
upon findings in favor of the plaintiff, in an action for
an injunction, tried to the court.　Affirmed.

*C. H. Baldwin,* for appellants.

*E. J. Doyle,* for respondent.

MACKINTOSH, J.—Respondent and appellant Knopes,
on August 12, 1918, signed a written lease for a term
of three years, the lease including the farm of appel-
lant and a large number of cattle, sheep, horses and
pigs, which, under the lease, the respondent was re-
quired to feed, care for, and breed, sharing the crops
of the land and the increase of the stock with the
lessor.　Respondent entered into possession September
1, 1918, and farmed the land, fed and cared for and

[1]Reported in 191 Pac. 822.

bred the live stock and cared for the increase thereof. In the summer of 1919, more than 120 acres of the farm had been put in summer fallow for the next year's crop; the respondent had stored in the barn enough hay to care for the live stock during the succeeding winter, and the cattle, horses, sheep and hogs had been bred, and from some the increase had been foaled and born, and some were about to be foaled and born; some of the live stock had been bred for 1920 and were with foal. Respondent had hired helpers and herders, and had not yet received any benefit from the increase of the stock because the increase was not yet mature or marketable. On September 1, 1919, these things having been done, the appellant served notice under the unlawful detainer statute, demanding that the respondent vacate the land, and upon the respondent's failure to comply with the notice, an action was begun by the appellants against the respondent, seeking to obtain possession. After that action had been commenced, the present action was instituted by the respondent against the appellants asking for an injunction restraining them from proceeding further with their suit, and this appeal is from a decision favorable to respondent in the second action.

Some confusion exists in the record and the briefs in regard to the two actions, but the first action is not before this court. The action that was tried was the suit in which the respondent was plaintiff, and we are not here interested in the other action, which has not been appealed.

The appellants claim their right to the possession of the property upon three grounds; (1) that the lease in question was void for the reason that appellant Anna Knopes, the wife of Henry Knopes, did not sign the lease and that the property is community prop-

erty; (2) that the lease was void for the reason that it contained no description of the land; and (3) that the lease was void for the reason that it was unacknowledged.

First: The testimony shows that the land was the separate property of the husband Henry Knopes, and that being true, if the lease was otherwise good, the fact that the wife had not joined in the execution of it is immaterial. The husband, having the control and management of personal property, had a right to lease that without the wife joining in the execution of the lease, and the real property being his sole and separate property, it was not necessary for her signature to appear.

Second: The description contained in the lease is:

"The land to be rented in this lease is what used to be the A. C. Hollenbeck ranch now owned by the first party, and is located on what is known as Montgomery Ridge, in township eight, range 46, and township eight, 47, all in Asotin county, Washington."

It may be that this description would not be sufficient in an unexecuted contract to convey the property, or in a contract between an owner and broker for real estate commission, but this was not an unexecuted contract or commission agreement. The respondent entered into possession and did those things called for by the instrument, and this is sufficient to make the question of imperfect description of no moment. The cases of *Rogers v. Lippy*, 99 Wash. 312, 169 Pac. 858, L. R. A. 1918 C 583; *Nelson v. Davis*, 102 Wash. 313, 172 Pac. 1178, relied on by appellant, are cases of incomplete description in unexecuted contracts to convey. The parties here being in possession under the instrument was sufficient to take the contract out of the statute of frauds, so far as the question of description

is concerned. *Johnson v. Puget Mill Co.,* 28 Wash. 515, 68 Pac. 867; *Federal Iron & Brass Bed Co. v. Hock,* 42 Wash. 668, 85 Pac. 418; *O'Connor v. Enos,* 56 Wash. 448, 105 Pac. 1039.

Third: The most troublesome question arises from the fact that the lease was unacknowledged. While it has been held that an unacknowledged lease for a term of years is, under the statute, valid for a period not exceeding one year, or where the lease provides for an indefinite term with periodical rent reserved, it shall be construed as creating a tenancy from period to period, yet, under certain circumstances, the rule has been that an unacknowledged lease for a term of years will be held to be binding for the entire term reserved, upon the principle of equitable estoppel, which prevents a party to a transaction from relying upon the invalidity, where the other party has acted in conformity with the contract and its subject-matter and has thus placed himself in a position where it would be unfair to hold the contract invalid. In other words, the party has been prevented from asserting the invalidity of a contract entered into where "it would be a fraud in a party to assert what his previous conduct had denied, when on the fact of that denial others have acted." 16 Cyc. 725. Such "a person will not be allowed to use the statute as a means to perpetrate fraud, since the chief object of the statute was to remove the temptation to commit perjury." 20 Cyc. 280. Where the consideration which has been paid by the person against whom the invalidity of the lease or contract has been urged is not a consideration which goes to the entire term provided in the writing, it has been held that there is no reason for the exercise of the rule of equitable estoppel. *Dorman v. Plowman,* 41 Wash. 477, 83 Pac. 322; *Grubb v. House,* 93 Wash.

200, 160 Pac. 421; *Spreitzer v. Miller,* 98 Wash. 601, 168 Pac. 179; *Eriksen v. Manufacturers' Distributing Co.,* 103 Wash. 159, 173 Pac. 1095. But where the lessee has performed such acts as are called for in the lease or contract in the belief, and relying upon the contract, that it would be inequitable to hold the contract invalid, such leases have been sustained as though they had been executed in strict conformity with the law.

In this case the provisions of the lease themselves show that it was the intention that the respondent was to have a full term of three years in which to receive the benefit of the various things to be done by him during the first year of the term. The evidence shows that young live stock on the place, at the time the lease was sought to be terminated, was of little value; that the respondent had stored in the barns stacks of feed with which he intended to care for this increase until such time as it could be marketed profitably. To cancel the lease would be to force the respondent to abandon all the unfoaled and unborn increase, the cost of breeding which had already been paid by the respondent. Altogether, the record is such as plainly calls for the application of the doctrine of estoppel. *McGlauflin v. Holman,* 1 Wash. 239, 24 Pac. 439; *Schulte v. Schering,* 2 Wash. 127, 26 Pac. 78. Especially does this case fall under the doctrine as announced in *Matzger v. Arcade Bldg. etc. Co.,* 80 Wash. 401, 141 Pac. 900, L. R. A. 1915 A 288, as follows:

"That the broad principle of equitable estoppel preventing a party to a transaction from asserting its invalidity in any case where the other party, acting on the faith of the first party's attitude touching the contract and its subject-matter, has placed himself in a position where it would be inequitable to hold the contract invalid to his injury applies alike to leases as to

other contracts is clearly recognized in *Forrester v. Reliable Transfer Co., supra,* where we said (59 Wash. page 95): 'This court has heretofore held that there may be such performance of acts referable to a lease contract that its terms will be enforced as though it had been executed with all the formalities prescribed by statute, the same as rights under an informally executed deed will be protected under like circumstances. . . . These cases involved both unacknowledged and oral leases. All were for terms for more than one year, and hence, did not comply with the statute in their execution, yet their provisions were given full force and effect because of the performance of acts with reference to and in the belief that they were binding contracts between the parties.' The language which we have quoted construes our own decisions not as limiting the doctrine of equitable estoppel as applied to the sustaining of contracts of lease, but as recognizing that doctrine as applicable to such contracts with like force and to the same extent as to other contracts. A careful consideration of our own decisions convinces us that what is said in some of them relative to estoppels by improvements made by the tenant beneficial to the freehold was said because that was the only estoppel claimed in the given case, not because that was the only fact which could work an estoppel in any case. In each of the cases called to our attention and chiefly relied on by the appellant where written leases have been held invalid for lack of acknowledgment, there was apparently an absence of sufficient facts invoking the principle of equitable estoppel on any ground.''

The appellant in his testimony admits that the respondent, at the time the lease was entered into, stated that he would not take the land unless he could have it for three years, and to now forfeit the lease would be to deprive the respondent of the summer fallow which he had prepared, the live stock which had not yet matured, and all of the live stock of which the increase was not yet born, and would deprive him of his labor

and expense in caring for the stock, and various other items to which we have referred.

For these reasons, the judgment will be affirmed.

HOLCOMB, C. J., PARKER, MAIN, and MITCHELL, JJ., concur.