[No. 28607.   Department Two.   July 18, 1942.]

EDYTHE MOBLEY *et al., Respondents,* v. CARL E. HARKINS *et al., Appellants.*[1]

[1]Reported in 128 P. (2d) 289.

*Gus L. Thacker, Marion Garland, Sr.,* and *Marion Garland, Jr.,* for appellants.

*Frederick B. Cohen,* for respondents.

STEINERT J.—Plaintiffs brought this action seeking (1) to compel defendant V. O. Harkins specifically to perform an alleged oral contract requiring him to assign a certain lease to them, and (2) to enjoin all the defendants, namely, V. O. Harkins, Carl E. Harkins, and the latter's wife, Ruth Harkins, from disturbing plaintiffs in their possession of the premises covered by the lease. The defendants cross-complained, seeking (1) the forfeiture of a conditional sale contract under which plaintiffs had purchased from defendant V. O. Harkins certain restaurant equipment located on the leased property, and (2) the surrender by plaintiffs of the premises on which the restaurant was conducted. Upon a trial without a jury, the court entered judgment, based on recited findings, exacting specific performance of the agreement as requested in plaintiffs' complaint, directing plaintiffs to pay into the registry of the court the balance due from them under the conditional sale contract, ordering the defendants to satisfy that contract upon such payment by plaintiffs, and dismissing defendants' cross-complaint, with prejudice. The defendants have appealed.

Prior to February 15, 1939, one Leone Mazzanti owned lot twenty and the south twenty feet of lot nineteen in block seven, First addition to Charleston, Kitsap county, Washington. On that date he leased a portion of this property, together with a small building located thereon, to one Ethel Vaughn. This lease was for a term of five years beginning February 14, 1939, at a rental of thirty dollars a month, and gave the lessee an option to renew it for an additional five-year period. Mrs. Vaughn thereafter conducted a lunchroom known as The Dog House upon the leased premises.

On July 30, 1940, Mazzanti leased all of lots nineteen and twenty (although the record shows that he did not own the whole of lot nineteen) to the appellants V. O. Harkins and C. E. Harkins, brothers, doing business as the Harkins Oil Company, for a period of ten years, at a rental of forty dollars per month. That lease was expressly made subject to the Vaughn lease and recited that the lessees, the Harkins brothers, were familiar with the prior lease and were to receive all further rent payments due from Mrs. Vaughn under her lease. In the trial below, both brothers testified that they did not see the Vaughn lease at the time of taking their lease from Mazzanti, but admitted that they were informed as to its general terms.

In the meantime, during the early summer of 1940, Mrs. Vaughn was desirous of selling her business and the lease under which she was operating. This fact becoming publicly known, a number of prospective purchasers called upon her and made inquiries looking to the possibility of effecting such a sale. To all these inquirers Mrs. Vaughn exhibited her lease, for, as she testified, that appeared to be the main concern of those manifesting an interest in a possible purchase.

Among those who called on Mrs. Vaughn were the

respondents, who are sisters. In their early conferences with Mrs. Vaughn, they were permitted to read her lease and inform themselves of its terms, but apparently no definite agreement relative to purchase of the business was reached. In the latter part of August, however, respondents returned, with the intention of renewing the negotiations, but were then informed that Mrs. Vaughn had recently sold the business to the Harkins Oil Company. It appears from the evidence that on August 14, 1940, V. O. Harkins bought Mrs. Vaughn's business, including her lease and all the furniture and equipment in the restaurant and in a one-room apartment located behind it, for the sum of six hundred dollars.

Upon the trial of the case, V. O. Harkins testified that he did not see the Vaughn lease at the time of his purchase and had never received a copy of it, but that he understood that it had about three years to run. Mrs. Vaughn, however, testified that she believed he had read the lease before completing the transaction. It is not altogether clear from the record whether V. O. Harkins bought the restaurant business for himself alone or for the partnership consisting of himself and his brother. Mrs. Vaughn's bill of sale, covering only the furniture and restaurant equipment, ran to both brothers, but their testimony, though confused, was to the effect that V. O. Harkins bought the business and the equipment for himself solely, and at the same time purchased the lease for the partnership.

When respondents learned that Mrs. Vaughn had sold her business to the Harkins Oil Company, they called on appellant V. O. Harkins and inquired of him whether he wished to sell it. The negotiations which followed culminated in an agreement in which Harkins became obligated to sell the business to respondents

for the sum of one thousand dollars and to give them a lease on the premises for a certain term, the length of which, however, is now the principal disputed question of fact. Respondents paid Harkins four hundred ninety dollars in cash and agreed to pay the balance in specified monthly installments.

V. O. Harkins testified that in these negotiations he never mentioned the Vaughn lease to respondents, but that he agreed to give them a three-year lease, subject to cancellation upon sale of the premises on which the business was conducted. The respondents, on the other hand, both testified that he definitely agreed to include the Vaughn lease in the sale of the business, and the trial court so found. It will be recalled that the Vaughn lease ran for a period of five years from February 14, 1939, with the option to renew it for an additional five-year period.

Respondents went into possession of the premises on or about September 3, 1940, and since then have repaired and repainted the restaurant and have installed additional equipment. On September 25th V. O. Harkins executed in favor of respondents a memorandum of conditional sale of "the fixtures and equipment used in and about that certain restaurant known as the Dog House . . . being the same property sold by Mrs. Vaughn to the vendor herein."

Respondent Edythe Mobley testified that when she made the down payment upon the contract of purchase she asked V. O. Harkins to deliver the Vaughn lease to her, and that he told her it was then at his home in Winlock, Washington, but promised to bring it in and assign it to her at the first opportunity. She and her sister made a number of further requests for the assignment of the lease, but each time were put off with some excuse. They finally refused to make any further

payments upon their contract or to pay any more rent until the lease should be assigned. Thereafter, C. E. Harkins told them that Mrs. Vaughn had held only a three-year conditional lease, and on March 21, 1941, V. O. Harkins wrote them a letter to the same effect, offering to give them a lease upon those terms.

In the meantime, on October 17, 1940, appellants had purchased from Mazzanti his entire interest in lot twenty and the south twenty feet of lot nineteen, including the land occupied by the restaurant building, and had received from him a warranty deed to the property. On May 3, 1941, appellants served on respondents a notice that their rent for June would be increased to fifty dollars and that they would be required to vacate the premises on July 1st. Respondents thereupon instituted this action seeking the relief referred to above.

■ The appellants' first contention upon this appeal is that no assignment of the Vaughn lease was legally possible because that leasehold was merged in the fee title to the real estate later acquired by them from Mazzanti. It is true that a person cannot be both landlord and tenant, and so it is a general rule that a tenancy for years merges and is extinguished in a freehold estate when the tenancy and the freehold are held by one person at one and the same time without any intermediate estate. 32 Am. Jur. 706, Landlord and Tenant, § 829; 35 C. J. 1056, Landlord and Tenant, § 220; 3 Thompson, Real Property (Perm. ed. 1940) 586, § 1387. Accord, *Rayburn v. Stewart-Calvert Co.,* 105 Wash. 570, 178 Pac. 454.

■ It was an inflexible rule at common law that a merger always took place when a greater and a lesser estate met in the ownership of the same person without any intermediate estate, but modernly the doctrine of

merger is not favored either at law or in equity. Consequently, the courts will not compel a merger of estates where the party in whom the two interests are vested does not intend such a merger to take place, or where it would be inimical to the interest of the party in whom the several estates have united (see *Beecher v. Thompson,* 120 Wash. 520, 207 Pac. 1056, 29 A. L. R. 699, and *Anderson v. Starr,* 159 Wash. 641, 294 Pac. 581, both involving mortgages), nor will they recognize a claim of merger where to do so would prejudice the rights of innocent third persons. 19 Am. Jur. 589, Estates, § 136; 21 C. J. 1034, Estates, § 234.

■ There is room for doubt, in this case, whether the Vaughn leasehold and the fee title ever met fully in the same ownership, since it is inferable that V. O. Harkins acquired the restaurant business, together with the lease, solely in his individual capacity, while the fee was acquired by the partnership. There is also a serious question as to the satisfaction here of the requirements that both interests be held at the same time and without intervening estates, because on the date of acquisition of the fee by appellants the leasehold interest had already become subject to the oral contract in which V. O. Harkins agreed to assign it to respondents, thus qualifying the leasehold interest alleged to have become merged in the fee. But even assuming that the fee title and the leasehold interest in this property met completely in the same persons at one and the same time, it must still be held that no merger occurred. Whether acting for himself as sole owner or as agent for the partnership, V. O. Harkins dealt with respondents in such a manner as to indicate an intention that the leasehold and the fee should not merge. Furthermore, even if the appellants, between themselves, had actually intended that a merger should take place, that result would still not

be sanctioned, because it would unjustly injure the rights of respondents who, under the facts as found by the trial court, must be held to be innocent third persons. For the same reasons, there was no merger of appellants' interest in the Vaughn leasehold with the more extended leasehold interest which they had previously acquired directly from Mazzanti.

The principal contention made by the appellants is that an oral agreement to assign a lease is unenforcible because within the statute of frauds. It is certainly true that wisdom would dictate the precaution of reducing agreements of such importance to writing, but whether the law requires that to be done is an entirely different matter, and one upon which this court has not heretofore directly passed. However, for reasons hereinafter stated, we are not required to reach a decision upon that particular question. For the purposes of this appeal, therefore, we shall assume, without so deciding, that an agreement to assign a lease of the kind here involved does come within the scope of the statute of frauds and must accordingly be in writing. That assumption does not of itself, however, compel a conclusion that the oral agreement to assign the lease is unenforcible.

The English statute of frauds was originally enacted to prevent fraud and perjury by requiring that certain enumerated agreements and conveyances be in writing. But it was soon found that the indiscriminate application of this statutory rule often had the contrary effect of actually furthering the perpetration of fraud. The courts of equity therefore developed the doctrine of equitable estoppel by reason of part performance, declaring that certain acts referable to an oral agreement would be regarded as taking that agreement out of the statute of frauds. In this way equity

guards against the utilization of the statute as a means for defrauding innocent parties who have been induced or permitted to change their position, in reliance upon oral agreements within its operation. See, generally, note (1936) 101 A. L. R. 923, 935 ff., wherein the case of *Mudgett v. Clay,* 5 Wash. 103, 31 Pac. 424, is cited.

The problem in each specific case, therefore, is to determine whether the facts are such as to take the oral agreement or conveyance in question out of the statute. This court has held that entry into possession by the lessee is sufficient part performance to take an oral lease out of the statute of frauds and render it enforcible as a tenancy from rent-period to rent-period, but not for the full term (*Richards v. Redelsheimer,* 36 Wash. 325, 78 Pac. 934; *Spreitzer v. Miller,* 98 Wash. 601, 168 Pac. 179), and the same is true where possession by the lessee is attended by payment of rent under the lease (*Watkins v. Balch,* 41 Wash. 310, 83 Pac. 321, 3 L. R. A. (N. S.) 852; *Armstrong v. Burkett,* 104 Wash. 476, 177 Pac. 333, rehearing denied, 180 Pac. 873. Compare *Dorman v. Plowman,* 41 Wash. 477, 83 Pac. 322, involving an unacknowledged lease). But the rules laid down in these cases are not in conflict with the numerous decisions in which we have enforced oral leases for the full term provided for therein because of the existence of facts, in addition to possession and payment of rent, which invoke the principles of equitable estoppel. *Matzger v. Arcade Building & Realty Co.,* 80 Wash. 401, 141 Pac. 900, L. R. A. 1915A, 288; *Garbrick v. Franz,* 13 Wn. (2d) 427, 125 P. (2d) 295, and cases therein cited.

In the case at bar, the respondents not only entered into possession and paid rent, but in addition they paid nearly five hundred dollars, and agreed to

pay more, for the restaurant fixtures and equipment and for the assignment of the Vaughn lease, which would have secured them the right to continue with the conduct of the business on the premises for a fixed and definite term of years. The record makes it clear that the agreement to assign the lease not only was the inducement moving the respondents to purchase the fixtures and equipment, but also constituted the consideration for a good part of the money payment which they agreed to make to the appellants. Furthermore, after taking possession of the property, respondents repaired and repainted the restaurant and installed additional equipment. Respondents assumed the obligations devolving upon them under their contract of purchase and went to the added expense necessary to a proper conduct of the business wholly in reliance upon the agreement that the Vaughn lease would be assigned to them. These facts bring the case within either one of two rules announced in *Matzger v. Arcade Building & Realty Co., supra.* Speaking through Judge Ellis, this court there held: (1) that the taking of possession by the lessee, accompanied by payment or performance of work as a part of the consideration—provided such payment or work is part of the inducement prompting the giving of the lease, goes to the entire term thereof, and is in addition to the rental to be paid at stated intervals throughout the tenancy—constitutes such part performance as will sustain the lease for the entire term provided therein; and (2) that the general doctrine of equitable estoppel operates not only to estop one from denying the validity of a transaction from which he has received and retained a benefit, but also operates to estop one party from denying the validity of an agreement or conveyance which, if not sustained as valid, would put

another party in a materially worse position by reason of having acted on the faith of the first party's attitude.

It is true that the lease in the *Matzger* case was in writing and came within the operation of the statute of frauds only because of lack of acknowledgment, but the rules are stated as extending to oral leases as well, and, in our opinion, the reason for the rule applies with as much force to oral leases as it does to defective written leases.

In *Lautenschlager v. Smith,* 155 Wash. 328, 284 Pac. 87, this court held that taking possession of land during the spring season, putting livestock on the premises with the knowledge and consent of the owner, and summer-fallowing the land preparatory to sowing winter and spring wheat at the proper times constituted sufficient part performance to take an oral lease of the land out of the operation of the statute of frauds. In the recent case of *Garbrick v. Franz, supra,* we reviewed many of our decisions touching the validity of leases, both oral and written, and, after liberal quotation from the *Matzger* case, *supra,* affirmed the rules which we have stated as having been announced therein. The *Garbrick* case summed up its conclusions in these words:

"In view of the facts that courts of equity will not allow the use of the statute of frauds to perpetrate a fraud, and that adherence to the strict wording of the statute would work a fraud upon individuals in the position of respondents [lessees], we feel committed to the rule as laid down in the *Matzger* case."

The doctrine of equitable estoppel by part performance relates to contracts generally, and, since an oral agreement for the assignment of a lease is simply a contract of which the subject matter is the assignment of a leasehold interest, the doctrine covers not only oral

leases but oral agreements for the assignment of such leases as well.

We therefore conclude that, because of respondents' part performance of their contract as hereinabove demonstrated, they are entitled, upon the terms imposed by the trial court, to specific performance by appellants of the oral agreement to assign the Vaughn lease.

The judgment is affirmed.

ROBINSON, C. J., BEALS, BLAKE, and JEFFERS, JJ., concur.

