# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILED**
**JULY 12, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SUSAN DANKIEVITCH, | ) | No. 38465-9-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| ADRIAN LAWRENCE and ESTHER | ) | |
| LAWRENCE, a marital community; | ) | |
| SHEILA MARTI, and PATRICIA | ) | |
| LAWRENCE, | ) | |
| | ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, J. — Susan Dankievitch appeals after the trial court granted partial summary judgment dismissing her request for specific performance of an oral agreement to sell real property and limiting her remedy to damages.

We confirm the sometimes overlooked rule that a trial court has equitable authority to order the sale of real property under an oral agreement that lacks otherwise material terms (1) if part performance takes the agreement outside the statute of frauds, and (2) if the agreement permits the balance to be paid in full rather than in installments.

No. 38465-9-III
*Dankievitch v. Lawrence*

Here, considering the facts in the light most favorable to Dankievitch: (1) Sheila Marti sold the subject property to Dankievitch for $110,000; (2) under an agreement for Dankievitch to pay her $1,000 or more per month; (3) no interest would accrue on the balance; (4) Dankievitch entered into possession of the property and made permanent, substantial, and valuable improvements; and (5) Marti agreed to transfer title after she completed her bankruptcy, at which time Marti would execute a quitclaim deed and the sale would be finalized. We reverse the trial court's grant of partial summary judgment and remand for proceedings consistent with this opinion.

FACTS

We present the facts in the light most favorable to Susan Dankievitch, given that our review is of a partial summary judgment order adverse to her.

*Agreement, payments, and moving onto property*

Sheila[1] Marti filed for chapter 13 bankruptcy in 2013. In August 2014, she spoke with Susan Dankievitch at Dankievitch's antique store. Marti told Dankievitch about her bankruptcy and said she owed back taxes on a piece of property she owned and she could not afford to keep it. Dankievitch told Marti she had been looking at some property

---

[1] In their briefs and pleadings, the parties spell Ms. Marti's first name "Sheila." But in a handwritten deed and in her bankruptcy records, her first name is spelled "Shiela." We elect to spell her name consistent with the pleadings.

2

No. 38465-9-III
*Dankievitch v. Lawrence*

nearby and Marti asked Dankievitch if she wanted to buy Marti's property instead. The

property, referred to by some county employees as "Hillbilly Farms," was 10 acres and

included a dilapidated house and property littered with useless junk. Clerk's Papers (CP)

at 69. The parties agreed that the purchase price would be $110,000 and Dankievitch

would take ownership in October 2014. They agreed to a monthly payment of $1,000 or

more. Marti opened a new bank account for Dankievitch to make the monthly payments.

Marti did not want the bankruptcy court to know about the sale so she told Dankievitch

not to pay the property taxes until her bankruptcy was completed, at which time the sale

could be finalized and the property would be quitclaimed to her.[2] Nothing was discussed

about liability for interest.[3]

On October 15, 2014, Dankievitch deposited $4,000 into Marti's account. Marti's

stepfather, Eldon Orr, was living on the property and Marti gave him notice to vacate.

After Orr left around the end of October, Dankievitch and her children moved onto the

property. Marti moved to Spokane to finish school. Dankievitch made semi-monthly

payments of $1,000 through the end of the year to help Marti get established in Spokane.

---

[2] We infer that Dankievitch would pay the balance owing contemporaneous with receiving the quitclaim deed.

[3] The record is unclear whether this means that no interest would accrue on the balance or that the parties would agree to a rate later. For purposes of this appeal, we construe this uncertainty as meaning that no interest would accrue.

3

No. 38465-9-III
*Dankievitch v. Lawrence*

Beginning in 2015, Dankievitch made $1,000 payments to Marti at the beginning of every month.

### *Marti's in-court admission that she sold the property to Dankievitch*

In 2015, Orr sued Marti in small claims court for conversion of possessions he had left on the property. At the hearing, Orr testified that Marti "sold [the property] to Sue Dankievitch after her mother passed away." CP at 169. When the court asked for a ballpark date of the sale, Marti told the court it was "October of 2014." CP at 171. Marti further testified: "I left the house in October of 2014. . . . I left the month I sold it." CP at 172. She explained: "I moved to Spokane to finish school. I couldn't maintain the property, so I sold it to Sue. . . . I never came back to the property." CP at 173. Dankievitch was also present at the hearing and testified she had been cleaning up the property for over one year.

Based on this testimony, the small claims court found Marti was not liable for conversion because she had no control over the property after she sold it to Dankievitch. Because Marti testified in court about selling the property to Dankievitch, Dankievitch did not feel she needed to get their agreement in writing.

4

No. 38465-9-III
*Dankievitch v. Lawrence*

*Substantial, permanent, and valuable improvements*

In January 2015, Dankievitch replaced two water heaters on the property at a cost of $850.00. In September 2015, she bought a new well pump for $300.00. In April 2017, she remodeled one bathroom, began remodeling a second, and installed two new toilets at a cost of $430.00. In August 2017, she repaired the water lines running from the well to the house at a cost of $830.77. In March 2018, she had the septic tank pumped for $425.00 and replaced the tank. Dankievitch did not consult Marti for permission on any of these improvements.

*Marti's post-bankruptcy quitclaim to others and Dankievitch's quiet title action*

On June 11, 2018, Marti completed her bankruptcy. On June 22, Marti quitclaimed the property to Harry Marti and Arley Lawrence.[4] The deed recited the consideration as "Gift, No Money exchange." CP at 98. Dankievitch learned that the bankruptcy was over when Bill Lawrence handed her a paper, perhaps the quitclaim deed, saying, "This is called payback, bitch."[5] CP at 72. Soon after, Dankievitch paid the property taxes for 2016, 2017, and 2018.

---

[4] The record does not answer whether the transferees are related to Sheila Marti.

[5] The record does not answer whether Bill Lawrence is related to Arley Lawrence.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38465-9-III
*Dankievitch v. Lawrence*

On August 2, 2018, Dankievitch filed a petition for quiet title, seeking specific performance of the agreement, naming Sheila Marti, Harry Marti, and Arley Lawrence as defendants. The next month, Dankievitch tried to deposit $1,000 into Marti's account. The bank teller advised her the account had been closed.

Marti denied that she had sold the property to Dankievitch and raised the defense of the statute of frauds. She testified in a deposition that Dankievitch moved onto the property and rented it for a payment of $1,000 per month "or more, if she could." CP at 79.

Dankievitch similarly testified in a deposition about the circumstances and terms of the sale and the parties' reasons for not putting their agreement in writing or transferring the deed. Marti's attorney asked, "[W]hen did you assert that the sale be in writing?" CP at 72. Dankievitch responded, "We were going to do that when her bankruptcy was done. We were going to go up and do the deed, transfer, and, you know, whatever we needed to do at that point . . . ." CP at 72.

### *Marti's motion for summary judgment, entry of judgment, and appeal*

Marti moved for summary judgment and requested that the court quiet title in favor of Harry Marti. Dankievitch responded that partial performance removed the oral

6

No. 38465-9-III
*Dankievitch v. Lawrence*

agreement from the statute of frauds and that she was not required to prove all of the requisites for the future sale of real estate because the sale had occurred.

Viewing the evidence in the light most favorable to Dankievitch, the trial court determined that part performance removed the oral agreement from the statute of frauds, but that the agreement could not be specifically enforced because the parties had not agreed on several material terms. The court granted Marti's summary judgment motion, permitted Dankievitch to sue for damages and later granted Harry Marti's motion to eject Dankievitch from the property.

After Dankievitch's unsuccessful motion for reconsideration, the parties agreed to entry of a judgment with CR 54(b) language. The CR 54(b) findings explain that the court had determined substantial issues in the case and, although claims for potential damages remained, there was "no reason to delay judgment at this time." CP at 387. In support of their request to have judgment entered, the parties stipulated, "Trying the remaining issues will take extensive time and the parties do not wish to risk incurring legal fees potentially for no reason, prior to the main issue being decided [on appeal]." CP at 381. Dankievitch appealed.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38465-9-III
*Dankievitch v. Lawrence*

## ANALYSIS[6]

A.      SUMMARY JUDGMENT STANDARD OF REVIEW

We review orders granting summary judgment de novo, "engag[ing] in the same inquiry as the trial court." *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993). A party moving for summary judgment must show there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. CR 56(c). A material fact is one on which the outcome of the litigation depends. *Clements*, 121 Wn.2d at 249. In deciding a motion for summary judgment, the trial court views all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Id.*

A defendant moving for summary judgment may meet its initial burden by showing there is an absence of evidence to support the plaintiff's case. *Friends of Moon Creek v. Diamond Lake Improvement Ass'n*, 2 Wn. App. 2d 484, 494, 409 P.3d 1084

---

[6] The parties do not address whether the matter is properly before us on appeal. We doubt that the CR 54(b) findings are sufficient to permit review as of right. *See Gull Indus., Inc. v. State Farm & Cas. Co.*, 181 Wn. App. 463, 480-82, 326 P.3d 782 (2014) (discussing the requirement for sufficient findings to support an appeal of a judgment that adjudicates less than all claims).

Nevertheless, we accept discretionary review of this appeal under RAP 2.3(b)(4). That rule permits discretionary review if the superior court has certified, or the parties have stipulated, that the order involves a controlling question of unsettled law and immediate review may materially advance the ultimate termination of the litigation.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38465-9-III
*Dankievitch v. Lawrence*

(2018). If the defendant meets this burden, the burden then shifts to the plaintiff to set

forth specific facts demonstrating a genuine issue for trial. *Id.* If the nonmoving party

fails to make a showing sufficient to establish an element essential to their claim and on

which that party bears the burden of proof at trial, then the trial court should grant the

defendant's motion. *Burton v. Twin Commander Aircraft, LLC*, 171 Wn.2d 204, 223, 254

P.3d 778 (2011).

      B.      PART PERFORMANCE AND THE STATUTE OF FRAUDS

      In Washington, conveyances of land must be made by written deed.

RCW 64.04.010, .020. This stems from the statute of frauds, which "was originally

enacted to prevent fraud and perjury by requiring that certain enumerated agreements and

conveyances be in writing." *Mobley v. Harkins*, 14 Wn.2d 276, 283, 128 P.2d 289

(1942).

      Unfortunately, the "indiscriminate application" of this rule often furthered the

perpetration of fraud. *Id.* In response, courts "developed the doctrine of equitable

estoppel by reason of part performance, declaring that certain acts referable to an oral

agreement would be regarded as taking that agreement out of the statute of frauds." *Id.*

The doctrine "guards against the utilization of the statute as a means for defrauding

9

No. 38465-9-III
*Dankievitch v. Lawrence*

innocent parties who have been induced or permitted to change their position, in reliance upon oral agreements within its operation." *Id.* at 284.

Courts examine three factors when determining whether there has been part performance of an oral agreement such that it removes the agreement from the statute of frauds:

> (1) delivery and assumption of actual and exclusive possession;
> (2) payment or tender of consideration; and (3) the making of permanent, substantial and valuable improvements, referable to the contract.

*Berg v. Ting*, 125 Wn.2d 544, 556, 886 P.2d 564 (1995) (quoting *Kruse v. Hemp*, 121 Wn.2d 715, 724-25, 853 P.2d 1373 (1993)). The law is unsettled whether part performance can be established by the presence of only two of the three factors. In *Berg*, the court stated that prior dictum and observations of its prior holdings suggest that two factors are sufficient. *Id.* at 557-58.

Nevertheless, all three factors are present here. Dankievitch assumed actual and exclusive possession of the property, paid $56,000[7] over a period of years toward the purchase price, and made permanent, substantial and valuable improvements. Viewing the evidence in her favor, we conclude that Dankievitch has demonstrated all three part

---

[7] Although Marti does not dispute the total amount of Dankievitch's payments, the deposit slips in the record total only $52,000.

10

No. 38465-9-III
*Dankievitch v. Lawrence*

performance factors so as to remove the oral agreement from the statute of frauds.

      C.      SPECIFIC PERFORMANCE

The trial court granted summary judgment to Marti because Dankievitch failed to produce evidence that the parties agreed to the 13 material terms identified in *Hubbell v. Ward*, 40 Wn.2d 779, 782-83, 246 P.2d 468 (1952). Dankievitch contends that *Hubbell* enumerates terms necessary to specifically enforce a *future* real estate contract and that those terms are not necessary for her and Marti's agreement. We agree.

In *Hubbell*, the parties executed an earnest money agreement for an apartment building. *Id.* at 780. The agreement provided that Hubbell would pay $9,000 down and sign a contract for the balance of $20,000, payable at $200 or more per month, including interest of five percent on deferred balances. *Id.* After Ward refused to honor the agreement, Hubbell sued for specific performance. *Id.* The trial court ordered Ward "'to enter into a real estate contract according to the terms of said earnest money receipt and agreement.'" *Id*. at 780-81.

The *Hubbell* court determined that the earnest money agreement was too vague to enforce. It explained that there were 13 important and material terms that the earnest money agreement had not covered: "(a) time and manner for transferring title; (b) procedure for declaring forfeiture; (c) allocation of risk with respect to damage or

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38465-9-III
*Dankievitch v. Lawrence*

destruction; (d) insurance provisions; (e) responsibility for: (i) taxes, (ii) repairs, and (iii) water and utilities; (f) restrictions, if any, on (i) capital improvements, (ii) liens, (iii) removal or replacement of personal property, and (iv) types of use; (g) time and place for monthly payments; and (h) indemnification provisions." *Kruse*, 121 Wn.2d at 722 (citing *Hubbell*, 40 Wn.2d at 782-83). The *Hubbell* court discussed prior decisions and concluded that "the agreement here, in so far as it looks to the preparation and execution of *a future* real estate purchase contract upon which the minds of the parties have not met, is not sufficiently definite and certain and cannot be specifically enforced." *Hubbell*, 40 Wn.2d at 787 (emphasis added).

But the *Hubbell* court provided Hubbell relief. It reasoned, "The agreement contains within itself the essential elements of a binding contract . . . ." *Id.* The plaintiffs "are given an option to pay the entire consideration at any time." *Id.* The parties agreed to "pay and accept $9,000 down and the balance ($20,000) in installments of $200 *or more* per month, including interest." *Id.* at 788. "Thus [Hubbell was] given an option to pay the balance of the consideration in cash at any time." *Id.* The *Hubbell* court concluded, "[W]e are of the opinion that [Hubbell was] entitled to a decree of specific performance directing [Ward] to execute and deliver a deed and bill of sale conditioned upon [Hubbell] tendering payment of the balance of the full contract price of $29,000

12

No. 38465-9-III
*Dankievitch v. Lawrence*

within a reasonable period of time." *Id.* at 787-88. We note the internal consistency of

*Hubbell*: If the parties' agreement permits the buyer to pay the balance at any time, and

the buyer pays the balance within a reasonable time after the court's decree, the court is

not required to insert one or more *Hubbell* terms to create an agreement for the parties.

In *Kruse*, the parties executed a five-year lease agreement that included an option

allowing Kruse, the lessee, to purchase the property. The agreement provided that the

option price would be $255,000, described how the interest rate would be calculated,

required payments to be amortized over 25 years, but limited the monthly payment to

$3,500. 121 Wn.2d at 717. When Kruse tendered the real estate contract, Hemp refused

to execute it because it failed to recognize an easement over the property in favor of an

adjacent lot he owned. *Id.*

The *Kruse* court, citing *Hubbell*, explained, "A contract to enter into a future

contract . . . must specify all of the material and essential terms of the future contract

before a court may order specific performance." *Id.* at 722. "When specific performance

is sought, rather than legal damages, a higher standard of proof must be met: 'clear and

unequivocal' evidence that 'leaves no doubt as to the terms, character, and existence of

the contract.'" *Id.* (quoting *Powers v. Hastings*, 93 Wn.2d 709, 717, 713, 612 P.2d 371

(1980)). The *Kruse* court, noting that the parties did not refer to or include a real estate

13

No. 38465-9-III
*Dankievitch v. Lawrence*

contract form in the lease agreement that addressed the 13 *Hubbell* terms, concluded that there was no meeting of the minds as to all the material and essential terms of the real estate contract and denied specific performance. *Id.* at 723. The *Kruse* court distinguished *Hubbell*, noting that the agreement "precluded the possibility of a cash sale by establishing a limit on the amount of a monthly payment (*i.e.*, $3,500) and making no specific provision for a cash sale." *Id.* at 722 n.1.

Here, the agreement contemplated monthly payments of $1,000 or more until Marti completed her bankruptcy, at which time Marti would execute a quitclaim deed transferring title and Dankievitch would pay the balance of the purchase price. When Dankievitch sued for quiet title, she requested specific performance of that promise and recognition that her title was paramount. Thus, the 13 *Hubbell* terms are immaterial to the relief requested by Dankievitch. We conclude the trial court erred when it dismissed Dankievitch's request for specific performance.[8]

---

[8] Marti asserts that Dankievitch's deposition testimony "indicate[d] that an agreement still needed to be reached." Br. of Resp't at 11. We disagree. The excerpted portion of the deposition merely shows that the parties agreed to complete the deed transfer after the bankruptcy was over, not that they had further negotiations planned.

No. 38465-9-III
*Dankievitch v. Lawrence*

D.      DENIAL OF AFFIRMATIVE RELIEF

Dankievitch requests that *we* order specific performance. There may be multiple reasons to deny her request. The most obvious reason is that we do not generally review a claim of error raised for the first time on appeal. RAP 2.5(a). Dankievitch did not move for summary judgment below, so Marti did not have a full opportunity to oppose the request for affirmative relief she makes on appeal.

Also, as noted previously, when specific performance is sought, the purchaser must prove the contract by clear and unequivocal evidence that leaves no doubt as to the terms, character, and existence of the contract. *Kruse*, 121 Wn.2d at 722. Here, the parties did not discuss interest. This may be because the parties believed no interest would accrue or it may be because the parties had not agreed on a rate. If the former, specific performance might be appropriate; if the latter, it would not.

According to Dankievitch, Marti insisted that the sale not be formalized with a deed because Marti wanted to hide the sale from the bankruptcy court. One might infer that the parties tacitly agreed that no interest would be assessed on the balance because it was Marti, not Dankievitch, who insisted on delaying the transfer and payment. Although one might infer this, one need not. A genuine issue of material fact remains undecided.

No. 38465-9-III
*Dankievitch v. Lawrence*

E. ATTORNEY FEES

Dankievitch requests attorney fees on appeal based on Marti's bad faith conduct. We decline to award fees.

"'Attorney fees may be awarded only if authorized by contract, statute or recognized ground in equity.'" *City of Sequim v. Malkasian*, 157 Wn.2d 251, 271, 138 P.3d 943 (2006) (internal quotation marks omitted) (quoting *Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 70, 847 P.2d 440 (1993)). An award of attorney fees may be justified on the equitable ground of bad faith. *Rogerson Hiller Corp. v. Port of Port Angeles*, 96 Wn. App. 918, 927, 982 P.2d 131 (1999).

There are three types of bad faith: (1) prelitigation misconduct, (2) procedural bad faith, and (3) substantive bad faith. *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 784, 275 P.3d 339 (2012). Dankievitch appears to rely on the first type.

Prelitigation misconduct refers to obdurate or obstinate conduct that necessitates legal action to enforce a clearly valid claim or right. *Id.* As we indicated above, Dankievitch's right to specific performance is not clear. But her claim for damages for breach of the oral agreement may well be, given Marti's judicial admission in the prior litigation. Because this appeal relates to the former remedy, we deny Dankievitch's request for attorney fees on appeal.

16

No. 38465-9-III
*Dankievitch v. Lawrence*

Reversed and remanded.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Siddoway, C.J.                                                   Pennell, J.

17